JOHN MILTON, APPELLANT, VS. DAVID BLACKSHEAR, APPELLEE.

| 8 | 161 |
| 36 | 24 |
| 8 | 161 |
| 41 | 273 |
| 8 | 161 |
| 42 | 615 |
| 8 | 161 |
| 43 | 590 |
| 8 | 161 |
| 44 | 712 |

1. It is not every irrelevant instruction that will afford a ground for error. The instruction, to be erroneous, must be not only irrelevant, but likely to mislead the jury in the formation of their verdict.

2. Where the demand sued for is a *debt eo nomine*, in contradistinction to

21

*unliquidated damages,* interest is allowable thereon from the time when the same becomes legally due and payable; and when no such time is ascertainable, then interest is allowable only from the date of an actual demand of payment, or of the commencement of the suit.

3. The Supreme Court will not remand a cause, simply on the ground of a *slight excess* in the amount of the verdict.

4. It is a well settled rule, in reference to the granting of new trials in the courts of common law, that the party applying on the ground of *newly discovered evidence,* must make his vigilance apparent; for if it is left even doubtful that he knew of the evidence, or that he might, but for negligence, have known and produced it, he will not succeed in his application.

5. On a motion for a new trial on the ground of newly discovered evidence, if the evidence proposed to be obtained be merely *cumulative,* or in corroboration of testimony to a point presented at the trial, the motion will not be granted.

This case was decided at Mariana.

On the 21st day of April, 1857, the appellee instituted in the Circuit Court of Jackson county an action of assumpsit against the appellant, to recover the sum of one hundred and sixty-three 22-100 dollars, claimed to be due for lumber sold and delivered at different times in the year 1855.

The declaration contains a single count for goods sold and delivered, and the appellant pleaded *non assumpsit,* upon which issue was joined.

On the trial, Charles Graves was sworn as a witness for the plaintiff, who testified that he was miller, who had charge of plaintiff's mills; that the lumber charged in the bill of particulars was sold and delivered, and that the custom of the mill was, when there was no other contract, the price of lumber was eight dollars per thousand, cash, or when called for during the year, or eight dollars if paid by the end of the year, otherwise ten dollars per thousand; that defendant said he would pay cash; that defendant called for his account, and was told by witness that the plaintiff made out the accounts from the book. Witness

told defendant, that if he, defendant, paid the money by Christmas, it would do as a cash sale.

Charles Hartsfield, a witness for defendant, testified that he, as the agent of the plaintiff, informed the defendant, in January, that he had the books in which the lumber accounts were kept to collect the amounts due; that he was the agent of the plaintiff; that he did not present the account to defendant; that defendant informed him, that if the witness would bring him the account at any time within three days that defendant would pay the amount, which was eight dollars per thousand; that witness did not know that the account ever had been presented afterwards; that up to that time the account had not been made out from the books.

Martin Embry, another witness for the defendant, testified that he was miller for plaintiff in the year 1856; that he presented the defendant the account sued on for this lumber some time in 1856 at ten dollars per thousand; that defendant refused to pay it, but tendered witness the money at eight dollars per thousand. He also presented two other accounts, charged at eight dollars per thousand, for lumber sold in 1856, amounting to near three hundred dollars, which defendant paid promptly.

The Court charged the jury:

"If the jury shall find for the plaintiff, they will allow him interest upon the amount which they may find to be due him from the time the money was due and payable by the contract; otherwise they will allow interest from the time of the institution of the suit."

To which instruction the defendant excepted.

The defendant then asked the Court to instruct the jury "that if it were to be a cash transaction, it was necessary the account should have been made out, that the party might know the amount."

Which instruction the Court refused, and the defendant excepted.

The jury returned a verdict for the plaintiff for the sum of one hundred and eighty-one 35-100 dollars, upon which judgment was rendered.

Afterwards the defendant moved for a new trial, on the ground of newly discovered evidence, based on an affidavit, in which he declares:

"That, since the trial, the defendant has ascertained that he can prove by Charles Hartsfield that he was present when the contract was made between the plaintiff and defendant, and that the contract was that the plaintiff would sell to the defendant the lumber at eight dollars per thousand feet, to be paid when the account should be presented to defendant for payment. The defendant did not know, previous to the trial, that he could prove the contract by the said Hartsfield or any one else; that said Hartsfield was witness in the case, and says the reason he did not prove the contract was that he was not sworn in chief, but only to answer such questions as should be asked him, and was not asked as to the contract."

The Court overruled the motion for a new trial, and the defendant appealed.

*D. P. Holland* for appellant.

We hold this was an unliquidated account for goods sold and delivered; that there being *no evidence* of *interest* being contracted to be paid, the Court erred in the charge.

There was no custom proved to charge interest.

There was no evidence of interest being chargeable.—See cases cited in Sedgwick on the Measure of Damages, 377; 1 Arch. N. P., page 300.

*A. H. Bush* for appellee :

In support of the charge of the Court, we contend, that if a debit ought to be paid at a particular time, and is not paid through the default of the debtor, compensation in damages equal to the value of the money, which is the legal interest upon it, shall be paid during such time as the party is in default. Interest is considered as incident, legally, to every debt certain in amount and payable at a certain time.—See 1 American Leading Cases, Selleck vs. French, pp. 493, 496, 498, 499, 506; 2 Iredell's Digest, 591; 2 Iredell's Digest, 593, n. 13; 1 Martin, 37, Karghn vs. Kennedy; State vs. Blount, 1 Hay., 4; *Ibid.*, 173; Door vs. Adam's adm'r, 5 Munf., 21, 23; 1 Mason, 117; Moore vs. Patten, 2 Porter, 451. As to the South Carolina cases, see Goddan vs. Bulow, 1 N. & M., 45, 56, 57, 60, 61, 62; Harper's Law Reports, 86.

If he seeks to avail himself of a tender, it should have been by plea with a *profert in curia*.—Spann vs. Baltzell, 1 Fla., 301, 317.

Whenever the debtor can, by the terms of the contract, avoid the payment of a larger by the payment of a smaller sum at an earlier day, the contract is not usurious, but conditional, and the larger sum becomes a penalty.—2 Iredell's Digest, 815, n. 6; Moore vs. Hylton *et al.*, 1 Dev. Eq., 429.

The application for a new trial ought not to be granted, because the affidavit does not show that the newly discovered testimony could not have been obtained in the first trial by the exercise of reasonable diligence.—Graham on New Trials, 463, 473, 475; Watson vs. Dickens, 12 S. & M., 608; Williams vs. Young, 13 S. & M., 118; 1 Caines, 174; Steinbuck vs. Col. Ins. Co., 2 Caines' R., 133.

In this case, Hartsfield, by whom this testimony is to

be given, was introduced as a witness by defendant. Why was he not examined touching such matters?

A new trial ought not to be granted when the newly discovered evidence consists merely of cumulative facts or circumstances relative to the same matter controverted at the former trial.—Smith vs. Brush, 8 Johns. R., 84; Pike. vs. Evans, 15 Johns. R., 210.

There was no obligation on the part of the plaintiff to prove that the account was made out from the book. It was the duty of the defendant to have sought the plaintiff and asked for his account, and tendered himself ready to pay it. He was told by Graves that the plaintiff made out the account from the books. The defendant told Hartsfield to present the account to him in three days, and he would pay it. Why such a request? Why not have gone to plaintiff or even to his agent, instead of requiring the agent to go to him?

DuPONT, J., delivered the opinion of the Court.

This was a suit instituted in the Circuit Court of Jackson county, by the appellee against the appellant, for the recovery of the amount due for a bill of lumber delivered at various times during the year 1855. The suit was commenced on the 21st day of April, 1857, and the declaration contained the single indebitatus count for goods sold and delivered, and the issue was joined upon the plea of *non assumpsit*. The evidence adduced upon the trial established the fact, that the price of the lumber, if paid for within the current year, was to be eight dollars per thousand, but if not paid for by the close of the year, then it was to be ten dollars per thousand. Upon this evidence, the Court charged the jury as follows : " If the jury shall find for the plaintiff, they will allow him interest upon the amount which they may find to be due him, from the time

the money was due and payable by the contract, other-wise they will allow interest from the time of the institution of the suit."

Under this charge of the Court, the jury found a verdict for the plaintiff, for the whole amount of the account, estimating the price of the lumber at ten dollars per thousand, and gave interest thereon from the first day of January, 1856.

The appellant excepted to the charge of the Court, and this constitutes the first error assiged. In support of this exception the counsel for the appellant contended, first, that there being no evidence of any *contract* for the payment of interest, the charge was irrelevant and calculated to mislead the jury ; and secondly, that the demand sued upon being an open account and unliquidated, the law did not authorize the giving of interest.

With respect to the first point, it is undoubtedly true that the charge of the Court ought always to be relevant and strictly confined to the evidence adduced upon the trial. The correctness of this position is too obvious to need the enforcement of argument. But it is not every irrelevant instruction that will afford a ground for error. The instruction to be erroneous, must be not only irrelevant, but likely to mislead the jury in the formation of their verdict. We do not think that this instruction was calculated to have that effect, although the first clause of it may in some measure partake of the character of an abstract proposition, considered in reference to the evidence that was actually submitted to the jury. With respect to the second point, it is equally true, that as a general rule, the law did not anciently allow interest to be given upon an open account, or an unliquidated demand, of any character. But this rule was not universal, nor was the practice of the English Courts settled or uniform upon this sub-

ject, prior to the enactment of the 3 & 4 William 4th. It is indeed truly extraordinary that a question of such frequent occurrence should ever have remained for any length of time unsettled. So contradictory were the English authorities down to the time of Mr. Campbell, that in a note to D'Havilland vs. Bowerbank, (1 Camp. R. 53,) he is made to say : " It would fortunately be very difficult to fix upon another point of English law on which the authorities are so little in harmony with each other." We may reasonably presume that it was this very want of uniformity, and a prudent desire to limit the arbitrary discretion of Courts and juries, which induced the enactment before referred to.

Unfortunately for American jurisprudence, the same want of harmony is discoverable in the adjudications of our Courts ; but while the current of the English decisions would seem to sanction the position assumed by the counsel of the appellant, as the general rule on the subject, we are inclined to the opinion that the converse of that position, under certain restrictions, will be found to embody the American doctrine.

It is laid down in 1 American Leading Cases, page 498, that " in this country, the general principle has long been settled, that if a debt ought to be paid at a particular time, and it is not then paid through the default of the debtor, compensation in damages equal to the value of the money, which is the legal interest upon it, shall be paid during such time as the party is in default. Interest is considered as incident, legally, to every debt certain in amount, and payable at a certain time."

Mr. Perkins, in a note to his recent edition of Chitty on Contracts, (page 558 note) says : " But according to the American authorities, interest will be allowed after a demand of payment of an unsettled claim for goods sold and

delivered, or services rendered, from the time of the demand; and a presentment of the account, or commencement of suit, is sufficient demand upon which to found, and from which to date a claim for interest."

Notwithstanding the sanction of these two American writers, it is yet painful to reflect that there is still such want of harmony between the Courts of the different States, that it is venturing almost too much to declare what is the American law upon the subject. Each State seems to have a rule for itself, and in the midst of these conflicting views, it will not be deemed unbecoming in us, should we cease to pursue the bewildering lights of other States, prescribe to ourselves that rule which to our minds is most consonant with sound reason and enlightened policy, and which has been acted upon from the earliest organization of our Territorial government, to the present time. In pursuance of that object, we are inclined to hold that in all cases where the demand sued for is a debt *eo nomine*, in contradistinction to unliquidated damages, interest is allowable thereon from the time when the same becomes legally due and payable; and when no such time is ascertainable, then interest is allowable only from the date of an actual demand of payment, or of the commencement of the suit. Applying this rule to the charge of the Court complained of, and it seems to have been eminently calculated to guide the jury to a proper conclusion in the formation of their verdict. It is true that the verdict is not in strict conformity to the instruction, and had a motion been made for a new trial *on that ground* and refused, and were the error of such an amount as to demand consideration, we might be inclined to give the defendant a new trial, for the purpose of having it corrected. But the amount of the excess is so trifling, that acting upon the maxim of " *de minimis non*

*curat lex,*" we are indisposed, by remanding the cause, to subject the parties to additional costs, which would probably amount to more than the actual excess of the verdict. The evidence shows that a demand for payment of the account was made some time in the year 1856, but the precise date is not stated. The suit was instituted on the 21st day of April, 1857. The error in the verdict therefore, is, that the interest was calculated from the 1st day of January, 1856, when, in conformity with the instruction of the Court, it ought to have ben calculated only from the date of the commencement of the suit, or at farthest, only from the 31st day of December, 1856. The excess in the one case amounts to about nine dollars and in the other to about eleven dollars—a sum too small, considering the amount of the principal demand, to subject the parties to further litigation. This amount, the plaintiff ought in conscience to remit.

The second error assigned is that the Court erred in refusing to give the following instruction, which was asked for by the plaintiff, to wit : " That if it (the purchase of the lumber) were to be a cash transaction, it was necessary the account should have been made out, that the party might know the amount."

Upon referring to the evidence in the record, we do not think that the instruction asked was necessary to guide the jury to a correct conclusion, and that it was very properly refused.

The second error assigned is therefore overruled.

The third exception is to the refusal of the Court to grant a new trial. Under our statute, error may be predicated upon the granting or refusal of an application for a new trial. Whenever an application of this character is made, it must be accompanied by an affidavit setting forth the grounds of the application. The affidavit in this case is as

follows : " The defendant petitions the Court for a new trial in the above case upon the following grounds—that since the trial, the defendant has ascertained that he can prove by Charles Hartsfield, that he was present when the contract was made between the plaintiff and the defendant, and that the contract was, that the plaintiff would sell to the defendant the lumber at eight dollars per thousand feet, to be paid for when the account should be presented to defendant for payment. The defendant did not know previous to the trial that he could prove the contract by the said Hartsfield, or any one else. That said Hartsfield was a witness in the case, and says, the reason he did not prove the contract was, that he was not sworn in chief, but only to answer such questions as should be asked him, and he was not asked as to the contract."

The affidavit is clearly insufficient, for the very obvious reason, first, because of the very manifest carelessness exhibited by the defendant in getting his evidence before the jury ; and secondly because, the evidence which he now seeks to avail himself of through a new trial, is entirely cumulative. With reference to the first ground of objection, it is pertinent to remark that Hartsfield, whose testimony it is sought to obtain, was introduced as a witness and did testify at the trial of the cause. The only excuse alleged for his not having testified as to the contract, is that he was not sworn in chief, but only to answer questions and that no question was asked him touching the contract. He was the witness of the defendant, and if he was either improperly sworn, or insufficiently examined, it was the fault of the defendant, of which he ought not now to be permitted to complain. It is a well settled rule, in reference to the granting of new trials in the Courts of common-law, that the party applying on the ground of newly discovered evidence must make his vigilance apparent, for if

it is left even doubtful, that he knew of the evidence, or that he might, but for negligence, have known and produced it, he will not succeed in his application.   1 Graham & Waterman on New Trials, 473.

It is laid down in the foregoing authority (3 Gra. & Wat. on N. T., 1,029,) that the discovery after the trial that the witness knew a material fact which he did not disclose, furnishes no excuse, if he was not questioned as to it.   And again, (at page 1,030,) that where the defendant, in an action on a promissory note, discovered after the trial that he could prove by a witness examined on the trial the payment of the note, which fact he was not aware of before or during the trial: held, that as ordinary diligence should have induced the defendant to enquire of the witness in respect to so material a point while he was being examined, he was not entitled to a new trial.—(Citing Wright vs. Alexander, 11 S. & M. R., 411.) This latter citation is precisely in point, and conclusive of the application made in this case.

But, admitting that there had been no negligence on the part of the defendant, then we hold that the application was inadmissible upon the second ground above stated, to wit: that the evidence sought to be procured is cumulative.   The application for the new trial is put upon the ground that the defendant would be able to prove, by a re-examination of Hartsfield, that " he (the witness) was present when the contract was made between the plaintiff and defendant, and that the contract was, that the plaintiff would sell the defendant the lumber at eight dollars per thousand feet, to be paid for when the account should be presented to defendant for payment." But the terms of the contract were fully proved upon the trial by another witness, (Graves,) whose testimony agrees in substance with that proposed to be given by Hartsfield.   He testifies

that "he (witness) was the miller who had charge of plaintiff's mills; that the lumber charged in the bill of particulars was sold and delivered, and that the custom of the mill was, where there was no contract, the price of lumber was eight dollars per thousand, cash, or when called for during the year, or eight dollars if paid by the end of the year—otherwise, ten dollars per thousand; that defendant said he would pay cash."

Here it will be seen that there is no material variance between the testimony of Graves touching the terms of the contract and that proposed to be obtained by a re-examination of Hartsfield; and it is a well-settled rule, that on a motion for a new trial, on the ground of newly discovered evidence, if the evidence proposed to be obtained be merely cumulative, or in corroboration of testimony to a point presented at the former trial, the motion will not be granted.—1 Graham & Waterman on New Trials, 486.

It is ordered and adjudged that the judgment of the Circuit Court, pronounced in this cause, be affirmed.

BALTZELL, C. J., dissenting.

This is a suit instituted by the appellee, Blackshear, to recover the amount due him for lumber, sold and delivered to appellant, Milton.

The principal question is as to interest and the rule which should prevail in cases of this kind. The proof is, that "*the custom of the mill* was, when there was no other contract, the price of lumber was eight dollars per thousand, cash, or when called for during the year, or if paid by the end of the year—otherwise ten dollars per thousand." Defendant said he would pay cash; that defendant called for his account; that witness told him that Mr. Blackshear made out the accounts from the books. Another witness testified that he, as the agent of Blackshear,

informed defendant, in January, that he had the books in which the lumber accounts were kept, to collect the accounts due; that defendant informed him, if witness would bring the account in at any time within three days he would pay the amount, which was $8 per thousand; that previous to that time the account had not been made out from the books. Another witness says, he presented the account some time in 1856, at $10 per thousand, and defendant refused to pay it, but tendered witness the money at $8 per thousand. Defendant paid promptly the other accounts charged at $8 per thousand, sold in 1856. On this evidence the Court instructed the jury, " that if they find for plaintiff, they will allow interest upon the amount which they may find to be due him from the time the money was due and payable by the contract; otherwise they will allow interest from the time of the institution of the suit." The Court below seems to have been of the opinion that there was a contract fixing the time of payment for the lumber. Their charge is clearly predicated upon this assumption, and the jury found their verdict accordingly. If there was such contract, it is to be found in the expression of the witness just stated, as to "the custom of the mill;" for there is no proof elsewhere of any agreement as to price. We may infer that the witness designed to say, it was the custom of the owner of the mill to make the charge. The enquiry then arises, does a habit of the owner of an article create a liability on the part of purchasers to pay the price he may thus charge? Most clearly not. It may not be denied that custom will sometimes influence a contract by adding stipulations to it, and by controlling and varying the meaning of the words. But, to entitle it to this effect, it must "fall within the reason of the rule, which makes it a part of the contract; and it comes within this only when it is so far

established and so far known to the parties that it must be supposed that their contract was made in reference to it. For this purpose the custom must be established, and not casual—uniform and not varying—general and not personal—and known to the parties."—2 Parsons on Cont., 48, 53. " As a general. rule, the knowledge of a custom must be *brought home to a party* who is to be affected by it. But, if it be shown that the custom is ancient, very general and well known, it will be often a presumption of law that the party had knowledge of it—although, if the custom appeared to be *more recent* and less generally known, it might be necessary to establish by independent proof the knowledge of this custom by the party."—2 Parsons, 56; 4 M. & W., 211; 5 Adolph. & Ell., 302; 1 B. & Ad., 505.

In the case of Stevens vs. Reeves, the effort was to apply the usage of a factory to an individual and the particular contract before the court. " There was no stipulation for any particular time, so that there is no express or implied contract that he would remain for any certain time, unless such contract is to be implied from what is set up in evidence as a usage of this and the neighboring factories, that all who are employed shall be held to remain until a fortnight after they give notice of an intention to quit. In order to make this a part of the contract, *as the usage is a particular one* and not a general custom, it should have appeared that the defendant knew of the usage when he entered upon the work, or before he left it. This is required in order to give effect to the particular usage, so as to operate upon a contract."—9 Pick., 200 ; 2 Wend., 501.

In another case, decided by the same intelligent Court, they say, that " usages of banks and other public institutions, and sometimes of individuals, may be legally proved, is well settled; and when such usages are known to the

176           SUPREME COURT.

parties, and business is transacted with reference to them, they enter into and form a part of the contract. *But* the *usages of individuals* cannot affect their contracts, unless it appear that the usage was known to the persons with whom they contracted. The usage is an independent fact, which, if proved, could not avail the plaintiffs, unless they would also bring a knowledge of it home to defendant."— Loring vs. Gurney, 5 Pick., 17; 3 Comstock, 502.

Rejecting from our consideration the evidence as to the usage, there remains but an open account for lumber sold by plaintiff to defendant, the only evidence as to price in the record being that ten dollars per hundred was claimed to be due by plaintiff and eight dollars paid on a like claim by defendant. The claim of plaintiff was then for as much as the lumber was worth, that amount to be assessed by the jury—a claim for unliquidated damages. The Court erred, then, in giving an instruction to the jury, assuming the fact of proof of a contract as to price. There is no pretext, then, for the claim of interest, except from the time of demand or the institution of the suit, and only on the amount of lumber at $8 per thousand. The English and American authorities are all agreed in this.—Chitty on Contracts, 504, notes. The rule is well settled, that interest is not recoverable on running or unliquidated accounts, unless there is an agreement, either express or implied, to pay interest.—6 Johns. Chy., 45; 2 Wend., 413, 501.

" The law does not give interest in such a case, (it was of goods sold and delivered,) and it can only be recovered when there was either a stipulated term of credit, which has expired, or an agreement, either express or implied, to pay interest."—Esterly vs. Cole, 3 Coms., 503; 1 Am. Lead. Cases, 352.

The American Courts hold, that interest may be given

on such a claim after demand of payment, or the account is liquidated that is rendered and no objections made to it, and if no special demand after the commencement of the suit.—2 Parson's on Cont., 381; 12 New Hamp., 484; 11 Wend., 478; Am. Lead. Cases, 353.

And this would comport with right and justice in the case before us, even if the custom as to the price were proved; for the evidence was that defendant called for his account before the expiration of the year, (we may reasonably infer for the purpose of payment,) but it was not furnished him, so that he was not in default in not paying, but the creditor, in not giving his bill and information as to its amount. To allow him, under such circumstances, to enlarge the price so greatly as to add two dollars a thousand, and give interest on this increased sum likewise, is going to an extent far beyond the most liberal of any of the authorities. "The decisions of the courts are greatly wanting in harmony, especially the American," it is said, "each State having a rule for itself, so that it is venturing too much to declare what is the American law on the subject." I do not assent to this proposition, and a more careful examination of the cases decided would, I think, with due deference, have led the Court to the very opposite conclusion. It is to be noticed, that there is no branch of the law more various and extended, accommodating itself to every difference of aspect in which a case may be presented, more and more intricate as the expansion of commerce during the last century may have produced such a result. To meet this phase and change, and the cases arising, and to dispose of them satisfactorily—to apply extract and illuminate the rules and principles, so as to constitute a system founded in justice and right, has been the high office, province and duty of the jurists and judges that have adorned

the American Courts—of Marshall, Kent, Story, Washington, Spencer, Savage, Marcy, Livingston, Thompson, Johnson, and others no less distinguished of the Courts of the United States, of New York, Pennsylvania, Massachusetts and others, and most nobly and skilfully has their work been done. That there may not be an exact concurrence of opinion in all respects, is not by any means surprising. The wonder is, that in such a number of cases adjudicated, there is so little conflict, such slight difference of opinion. Can we withhold the expression of our admiration that a system has been constructed so admirable for its wisdom, justice and excellence, and so well suited to all the various exigencies of business—so well adapted to the rendering equal and complete justice to parties? This tribute will be cheerfully rendered on an examination of the decisions, a summary of which is seen in the first volume of American Leading Cases, 346. I greatly doubt whether the preferred rule of this Court will be found, on comparison, to be in any respect superior "to the bewildering lights" furnished by these decisions, or that it would be desirable to blot them out to make way for its better illumination. "Precedents and rules must be followed, unless flatly absurd or unjust." Hence it is an imperative obligation on the part of a Court announcing a new law or rule differing from that already established, to demonstrate not only its injustice and impropriety—not only that what is already declared is not law, but also that the rule of their making is the superior and better, the true law. It is not sufficient to say that there is a want of harmony and a painful conflict to justify the making a new rule.

Of all others this last is the most delicate, inasmuch as such action operates on the past as well as the future, thus in all probability imposing hardships upon the citizen in not knowing how far, and to what extent his rights of prop-

erty, even of life or liberty, may be affected. Not so with a law made by the Legislature, which operates for the most part only in the future. We have here no analysis of the law as declared by other Courts—no presentation of the superior claims of the new rule. It is said, merely, that in the mind of the Court, " it is consonant to sound reason and enlightened policy." Now it is not difficult to see that this is directly opposed to correct judicial action, and makes the *ipse dixit* of the judges the *sic volo sic jubeo* of the magistrate the supreme law of the land.

By the rule made by the Court, now for the first time announced in its application to the present case, the property of defendant is taken from him and awarded to plaintiff, not in virtue of an existing law, nor because there are decisions of this or other Courts authorizing it, but because in their view there is another principle, and a law, superior and better. Surely there is no authority for any such action, and it is directly opposed to the spirit of our institutions, to the Constitution and the laws. I feel bound as an act of imperious duty to express my dissent and disapprobation of it. " The judges, it is well said, are intrusted by the Constitution with a portion of jurisdiction, defined and marked out by the common law and acts of Parliament, and it is a principle consonant to the spirit of that Constitution and which may be constantly traced as pervading the whole body of our jurisprudence, that *optima est lex quæ minimum relinquit arbitrio judicis; optimus judex qui minimum sibi*, that system of law is best which confides as little as possible to the discretion of the judge—that judge the best who relies as little as possible on his own opinion." Broom's Maxims, 36.

" By what maxims are judges of the Courts to be guided in their expositions, on what ground will their determina-

tion rest? Are the Courts to proceed upon established principles—to be governed by fixed rules, or, exercising a liberal discretion, to have recourse in doubtful cases to natural principles—to aid and moderate the law according to equitable considerations—to include in their deliberations those cases and circumstances which the legislator himself would have expressed had he foreseen them? To an English lawyer, brought up with sober veneration of the wise maxim, (so consonant to the spirit of our institutions and so constantly to be traced in the reading the whole body of our jurisprudence,) that *optima est lex quæ minimum relinquit arbitrio judicis ; optimus judex qui minimum sibi ;* the question would seem to present little difficulty." 2 Dwarris on Stat. 182; Smith's Com. on Const. 280.

"In other countries," an eminent author says, "every thing is left *in the breast of the judge* to determine, yet with us he is only to *declare and pronounce, not to make or new-model the law.*" 3 Black. Com. 327.

In the decisions of other Courts there is no undertaking on the part of eminent judges to make new rules, independent of the authority of their predecessors, but an effort to carry out the common law by the application of its principles to new cases, and modifying the rules flowing from them. Thus in Massachusetts, on this subject, the Court, after a careful examination and analysis of the authorities both English and American, say, "We have no statute regulating this subject, and none is necessary. Upon the principles of the common law, we think that it is clear interest is to be allowed when the law by implication makes it the duty of the party to pay over money to the owner, without any previous demand on his part." Dodge vs. Perkins, 9 Pick. 388.

In another important case, decided by the Supreme Court and afterwards the Court of Errors of New York,

the leading case on this subject, there is a masterly examination of all the decisions in this country and in England, more especially by Senator Spencer, whose effort was to educe rules from the precedents and decisions, and not make them, independently of the authorities, against which he most earnestly protested as not being within the province of the judiciary. Rensalaer Glass Factory vs. Ried, 3 Cowen, 419 ; 5 Cowen, 628.

I allude to his opinion more particularly as the Senator was in the minority, differing with the Court as to the allowance of interest in the case before it.

In reference to the subject at issue before us, the Court declares that interest shall not be given where the damages are liquidated. It adopts the American decisions in their most liberal extent, merely giving a different expression, to the principle established, whether with more force, greater precision, more clearness and propriety of expression, remains to be seen hereafter. The Court admits that the verdict does not conform to the instruction of the Court, as it gives too large a sum in damages by nine or eleven dollars, but asserts that this is too small to justify a reversal, quoting the maxim *de minimis non curat lex*, declaring at the same time that plaintiff ought in conscience to remit this sum. On reference to the authorities on this point, it will be found that the Court will not set aside a verdict where the damages are uncertain, but will where the amount is certain. In the early cases, five shillings and twenty shillings were considered too small. 2 Salk. 64–72 ; Strange, 940–1051 ; Doug. 509.

In more recent cases, where the verdict was for less than £20, this was considered trifling under a statute of 38 Geo. 3rd. See Tidd's Practice, 940. This was when the plaintiff obtained a verdict for these small sums. But it is not presumed that these cases have an application to this

State, where the jurisdiction of the Circuit Courts in all matters, civil and criminal, not excepted in the Constitution, is unlimited as to amount.

In McMillan vs. Savage, the Court held the jurisdiction of the Circuit Courts to extend to forty dollars.   6 Florida, 750,

It may be well doubted whether the ruling of the English Courts as to the smallness of the sum, unless absolutely trifling, is applicable here, except for amounts in which an appeal would not lie from a Justice's Court.

Under the view I take of the subject, the lumber was sold at $8 per thousand, this being the only evidence of price, and the demand for payment was some time in 1856, making 31st Dec. 1856, as the period of computation to the date of the judgment—so that an error has been made to the prejudice of plaintiff of $45.25, or thereabouts.

We all concur that the jury erred in allowing too much damages. I hold that the Court erred in giving to the jury an erroneous instruction, calculated to mislead them, making a verdict against the law and the evidence.   In my view there has been a mistrial—no rightful trial of the case on its merits, which have been mistaken by both Court and jury. It is a case where there is no evidence to warrant the finding of the jury, and the Court should have granted the motion for a new trial, although a different cause was assigned and relied upon in plaintiff's affidavit.   If the Court mislead the jury as to the legal effect of certain evidence given to them, it is but justice that the Court *ex-officio* order a new trial."   4 B. Monroe, 476.