SIMPSON & CO., APPELLANTS, vs. JOHN T. DANIELS, APPELLEE.

1. A verdict that "We, the jury, find for the plaintiff, and assess his damages at $1,662.40, with legal interest from the 1st September, 1876," expresses sufficiently the intention of the jury; the time for which such interest is to be computed and the rate are fixed. The clerk can make the necessary calculation and embody the amount in the judgment.

2. The court will not reverse a judgment founded on the verdict of a jury for the sole reason that immaterial evidence was admitted by the court, when it is apparent that such evidence could not have influenced the jury in forming their verdict.

3. A cause will not be remanded simply for the reason that there is a small excess in the amount of damages awarded by the verdict. The jurors are the proper judges from the evidence as to the amount to be awarded, and where the evidence will uphold the verdict, this court will not interfere.

4. A party applying for a new trial upon the ground of newly-discovered evidence "must make his vigilance apparent," and the evidence so sought to be introduced must not be cumulative.

5. D. brought his action against S. to recover damage sustained by reason of S's. negligence to one hundred and one pieces of hewn timber. On the trial it appeared that one D. S. was jointly interested with the plaintiff in twenty-one pieces, and that P. was also jointly interested with plaintiff in thirty-two pieces. The jury found for the plaintiff and assessed his damages as sustained on the whole one hundred and one pieces. The defendant S. moved for a new trial, and the plaintiff D. having, before judgment, remitted the average damages on the fifty-three pieces in which D. S. and P. were interested, the motion was denied, and judgment ordered for an amount equal to the average of the damage sustained by the plaintiff D. on the timber owned by him alone: *Held*, to be no error, the evidence showing the timber to be of like quality and value, and the damage having been calculated and arrived at by an average of the whole.

Appeal from the Circuit Court for Santa Rosa county.

John T. Daniels, the plaintiff, brought his action in Santa Rosa Circuit Court against Richard M. Bushnell, James Creary, E. H. Roberts, Henry T. Wright, John Adams, Benjamin Overman, and Susan A. Simpson, partners in business under the name of Simpson & Co.

The declaration alleges that the plaintiff had a large lot of hewn timber and saw logs in the Blackwater river, a navigable stream free to the use of the public, for the purpose of transportation to market; that the defendants were also desirous of transporting logs and timber to market down the same stream, and proposed to the plaintiff that if he would cove his timber and logs for a short time out of the main channel of the river, they would then give him a clear river for his transportation; that he proceeded to cove his timbered logs under this arrangement, and the defendants took possession of the stream, obstructed it with logs and booms, and thus kept plaintiff's timber and logs back for two years, by means whereof it became greatly depreciated in value, and that he was thereby injured and damaged to the amount of four thousand dollars.

One other count in the declaration charged the defendants with obstructing the Blackwater river, a navigable stream, so that plaintiff was prevented from getting his timber and logs to market for a great length of time, whereby the timber was depreciated and the market value was reduced.

The third count alleged that the defendants had wrongfully taken and converted to their own use two hundred hewn timber logs and five hundred saw logs of the value of four thousand dollars, being the property of the plaintiff.

The defendants deny that the Blackwater river is a navigable stream by the laws of Florida, and they deny that they made any agreement as is alleged by the plaintiff in the first count of his declaration; they also deny that they ever obstructed the Blackwater river, but allege that being en-

gaged in the manufacturing of lumber they have from time to time purchased logs on said river ; that the stream is so narrow that it is impossible to float logs down it, except when swollen by rains ; that they have at all times, as soon as it became possible to float logs, promptly and energetically endeavored, with a large and competent force of men, to float their logs out of the stream ; that by proper attention and diligence the plaintiff could have got out his logs earlier than he did ; that they, the defendants, offered to drive the plaintiff's timber and logs cheaper than he could get any one else to do it, which offer was declined ; that plaintiff never used any diligence, and that any damage he sustained was through his own inattention and negligence ; that they never converted to their own use any of the timber and logs as is alleged in the plaintiff's declaration.

Such further proceedings were had that the cause came on to be tried by a jury on the 10th day of April, 1878, who found for the plaintiff as follows : "We, the jury, find for the plaintiff, and assess his damages at $1,662.40, with legal interest from the 1st September, 1876."

The court then ordered judgment against the defendant for the sum of eighteen hundred and seventy-nine dollars and sixty-six cents, besides costs. The counsel for the defendants then moved for a new trial upon the following grounds :

1. Verdict was contrary to law.

2. Verdict was contrary to the evidence.

3. Verdict was contrary to the charge of the court.

4. Verdict gives to plaintiff excessive damages.

5. The court erred in admitting the evidence of S. S. Howell as to threats of Edward Jernigan.

6. Since the trial of said cause defendants have discovered new evidence which, if it had been known by them and introduced at the trial, would have materially affected the verdict of the jury.

7. The verdict of the jury is erroneous in allowing interest on the verdict from September 1st, 1876.

8. The court mistook the law as to the existence of a partnership between plaintiff and Sweeney and plaintiff and Pitts.

The court denied the motion for new trial, and made the following order :

" On motion for a new trial, it is ordered that upon a remittitur being entered by the plaintiff for interest found by the verdict, ($217.26) and proportional value of the twenty-one. of the one hundred and one pieces of timber in controversy, alleged to be the property of John T. Daniels and Darly Sweeney as partners, and the proportionate value of thirty-two of said one hundred and one pieces of timber, alleged to be the property of John T. Daniels and Thomas J. Pitts as partners, aggregate of said remittitur being $1,347.66, and the plaintiff having entered a remittitur for said amount, without prejudice to his right in the premises, the motion for a new trial is denied."

To this order the defendants excepted. Judgment was then entered for five hundred and thirty-two dollars, besides costs. From this judgment the defendants appeal, and assign the following errors :

1. The court erred in admitting the question to witness Howell as to declarations by Jarnegan as to booms.

2. The verdict of the jury was for excessive damages.

3. The court should have granted a new trial on the ground of newly-discovered evidence.

4. The court erred in assuming that the damage to the three lots was equal and proportionate.

*G. G. McWhorter* for Appellants.

*C. C. Yonge* for Appellee.

MR. JUSTICE VAN VALKENBURGH delivered the opinion of the court.

One of the grounds urged by the defendants for a new trial before the court below was that the verdict of the jury was erroneous in allowing interest on the assessed damages from the first day of September, 1876. We think there is no error in this, the damages were assessed by the jury at the sum of sixteen hundred and sixty-two dollars and forty cents, the computation and addition of the interest was simply a mechanical act, and could be computed and added by the court or clerk. There was no question as to the rate of interest, it was to be by the very terms of the verdict "legal interest," a rate fixed by the laws of the State. This question has been settled by this court in the case of Schultz vs. the Pacific Ins. Co., (14 Fla., 73.) In that case the court say: "There is no difficulty in the clerk calculating the interest from the date of the commencement of the suit to the date of the verdict; the periods are fixed by the verdict; there is no difficulty as to the rate; there were no issues in respect to interest."

In this case under consideration the periods are fixed "from the 1st of September, 1876;" the rate is fixed and there is no uncertainty as to the intention of the jury. This question is not, however, presented in the assignment of errors on file; the amount of such interest having been remitted by the plaintiff under the direction of the court before the final judgment was entered. See also Page vs. Cady, 1 Cowan, 115.

It is assigned for error that the court admitted a question to the witness Howell as to declarations and threats made by one Jarnegan as to booms on the Blackwater river. Howell was a witness introduced upon the part of the plaintiff. In answer to a question he testified that "Ed. Jarnegan was in charge of defendants' log drives and

booms." He was then inquired of if Jarnegan had made threats against any one who should interfere with the booms. The counsel for the defendants objected to this question because it was not shown at what time the threats were made, or that they were within the scope of the agent's authority.

The court overruled the objection, and the counsel for the defence excepted. The witness then answered that Jarnegan "said that any person he caught opening the booms would suffer."

We are of the opinion that to warrant the introduction of threats upon the part of an agent to bind the principal more proof of the agency than was given is necessary, but in this case that question is not important; the evidence was immaterial; the threat amounted to nothing; the booms had not in any degree prevented the plaintiff from getting his timber and logs to market; there was no complaint by the plaintiff that the booms obstructed his navigation of the river, but on the contrary he had already on his cross-examination testified that he "never was prevented from running his timber down by defendants' booms to his knowledge." Who should better know that fact than the plaintiff himself?

The evidence not being material, it is impossible to see how it could influence the jury in their consideration of the issues presented to them, or in any way affect their verdict. The court will not interfere with the finding of a jury for the sole reason that immaterial evidence has been introduced, when it is apparent that such evidence could have no influence on the jury in making up their verdict. Flint vs. Rogers, 15 Me., 67; Flanders vs. Davis, 19 N. H., 139.

The next error assigned is that the damages are excessive.

The declaration contains six counts, the first upon an alleged agreement by which the plaintiff was to cove his timber and logs temporarily, while the defendants drove or

floated their logs down the Blackwater river out of the way, they then giving to him "in a short time" a clear river for the transportation of his logs and timber on the stream to market. The plaintiff claims they did not fulfill this agreement, but by reason of their not clearing the river for a year or more his timber and logs were damaged in value, the market price fell, and he lost a large amount when he finally succeeded in disposing of them in the market.

The second count, while not setting up an agreement between the parties, alleges that defendants obstructed a navigable stream, so that plaintiff was prevented from transporting his timber to market on said stream for a great length of time; that by such delay the timber became of less value, and the market became greatly depreciated, causing large damage to plaintiff.

The third count alleges that the defendants became possessed of, and converted to their own use, timber and logs, the property of the plaintiff, of the value of four thousand dollars, to the damage to the plaintiff of that sum.

The fourth, fifth and sixth counts were for goods, wares and merchandise sold and delivered by plaintiff to defendants, for money had and received by the defendants for the plaintiff, and upon an account stated between them.

The evidence introduced on the part of the plaintiff showed that he had one hundred and one pieces of hewn timber in the river, averaging about one hundred and forty feet, and worth in all about three thousand dollars; that when he sold it he got six hundred dollars for it. This was plaintiff's own evidence. Hinote swears that "there was about one hundred pieces of the timber; it was over a hundred foot average; it was sound timber, worth about twelve cents for hundred foot average."

The evidence was thus before the jury. There was no conflict; if they took the evidence of the plaintiff Daniels,

the timber was worth from twenty-four to thirty hundred dollars; if they took the evidence of Hinote, who was not as particular as to the number of pieces or average, it would be considerably less in value; whatever proof they relied upon in calculating the amount of their verdict, it is evident that they deducted the sum of six hundred dollars which was received by plaintiff on the final sale of the timber, and rendered a verdict for $1,662.40 with interest. Had the plaintiff been entitled to recover for damage sustained by reasons of the obstructions and decay of all the timber, as complained of, we are not prepared to say that this verdict was excessive.

It was a question of fact, and the jury have figured it out. They knew, saw and heard the witnesses; they were acquainted with the locality, and could much better appreciate the weight to be given to the evidence than we can upon the record. It is not in every case that a cause will be remanded, simply for the reason that there is a slight excess in the amount of the verdict. It is difficult to tell precisely the weight which will be given by a jury to certain evidence. What operates with one may have no effect upon another, and where the evidence will uphold a verdict, the court will be slow to interfere with the finding of a jury. Milton vs. Blackshear, 8 Fla., 161.

The third error assigned is in not granting a new trial, on the ground of newly-discovered evidence.

In support of the motion the counsel for the defendants read an affidavit made by E. H. Roberts, one of the defendants, which is in the words following: "E. H. Roberts being sworn, in due form of law, deposes and says that since the trial of the case of J. T. Daniels vs. Simpson & Co., they, the defendants, have discovered new testimony, which, if it had been known to defendants they could make and had been introduced to the jury, would have materially affected their verdict; that the said evidence is this:

' that he expects to prove by one Bart. Blackman that a part of the timber claimed as belonging to plaintiff, and as sound by him, was seen and inspected by Blackman in the woods before it was hauled; that he looked at it with a view to haul it, and that it was damaged then; that affiant did not know of this evidence until since the trial of said cause, and that affiants have used every endeavor to obtain evidence bearing on the issues involved in the case.'" This affidavit, unsupported by any other evidence, does not warrant the granting of a new trial.

No sufficient reason is given for not producing the evidence on the trial of the cause before the jury. The party making application for new trial must not only show that the knowledge of this evidence had come to him since the trial, but he must show that it is not through the want of diligence that it did not come to him sooner. It is no sufficient proof of diligence in this respect to assert in his affidavit that "the defendants have used every endeavor to obtain evidence bearing on the issues involved in the case." Something more positive showing diligence, must be asserted. But were a new trial to be granted, there is no proof that Blackman would testify "that he looked at the timber with a view to haul it, and that it was damaged." Roberts only swears that he "expects to prove" this fact by one Bart Blackman. Where is the affidavit of Blackman, and how much was the timber damaged?

If this evidence could be produced on another trial, his affidavit might have been procured to have been used on this motion, and the court then would have been in a position to determine the value of his evidence. But this evidence when produced would have been simply cumulative, and, therefore, the motion should not have been granted on this ground.

The plaintiff, in making out his case, introduced evidence to show that the timber was sound when it was put into the

water. Hynote.swears it was sound; Thomas J. Pitts testi-
fies that the timber was in good order; the plaintiff on his
cross-examination, in answer to a question put by the de-
fendants' counsel, says, "It was not sap damaged when
coved." It would seem also from the evidence of Sweeney,
one of the witnesses introduced by the defendants, that this
alleged damage to the timber before it was put into the
creek was attempted to be proved by them. He says
"some of the Daniels timber was damaged before it was
coved, but after it was put in the creek."

It is now well settled that a party applying for a new
trial, on the ground of newly-discovered evidence, must
make his diligence apparent; that such evidence must not
be cumulative, but must relate to facts upon which there
was, upon the part of the moving party, no evidence on the
trial. Milton vs. Blackshear, 8 Fla., 161; Coker vs. Mer-
ritt, 16 Fla.

The last error relied upon is, that the court, in directing
a remittitur, erred in assuming that the damage to the three
lots of timber was equal and proportionate.

The jury found a verdict for plaintiff for the sum of
$1,662.40 with interest, which was subsequently computed
by the court and amounted to $217.26, making the whole
amount recovered by the plaintiff $1,879.66. On the motion
for new trial the court made an order that in the event of
the plaintiffs remitting the interest so allowed by the jury,
and the proportionate value of the twenty-one of the one
hundred and one pieces of timber, alleged to be the property
of Daniels and Sweeney as partners, and the proportionate
value of thirty-two of said one hundred and one pieces of
timber alleged to be the property of Daniels and Pitts as
partners, the amount so to be remitted, including the in-
interest being $1,347.66, the motion should be denied. Such
remittitur was entered by the plaintiff, and the judgment was
ordered for $532.

The appellant makes no question as to the authority of the court to order a remittitur; therefore that point is not before us for consideration.

The only question is, did the court err in assuming that the damage to the three lots of timber was equal and proportionate?

The evidence as to the length, quality and value of the timber, and the depreciation by decay and depression of the market, was directed entirely as to the *average* of the timber. No witness designates any portion of the whole lot as injured by the delay more than another. It seems to have been put into the creek about the same time, and to have been of about the same value in all respects. The plaintiff was a part owner in all of it, but Sweeney was proved to have been interested in twenty-one pieces, and Pitts in thirty-two. The court directed that the average value of these fifty-three pieces, as proven by the witnesses and found by the jury, should be remitted.

We cannot see that the court erred in this particular, and the judgment must be affirmed.