**In re FLIGHT MANAGEMENT, INC., Debtor.**

**Gregory K. CREWS, as Trustee, Plaintiff,**

**v.**

**Curtis TRUVER, Defendant.**

**Bankruptcy No. 88–104–BKC–3P7. Adv. No. 88–67.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 2, 1989.

Gregory K. Crews, Jacksonville, Fla., for plaintiff.

Donald W. Matthews, Jacksonville, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the Trustee's complaint to recover preferential transfers pursuant to 11 U.S.C. § 547. A trial of this matter was held March 8, 1989, and upon the evidence and stipulation of facts contained in the record, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

On April 19, 1985, the debtor entered into a contract with Aero Development, Inc. ("Aero") concerning the training of student pilots for Jacksonville University. On May 12, 1986, Aero claimed breach of contract and made written demand upon the debtor for payment of $15,125.40. On June 3, 1986, Aero made an additional written demand for $4,934.18 and filed suit for the amounts due under the contract.

On November 30, 1987, the Circuit Court for Duval County, Florida, entered an Amended Final Judgment awarding Aero $19,047.70 in damages plus $3,394.14 in interest computed from June 1, 1987. Approximately two months later, on January 19, 1988, the debtor filed a petition for relief in this Court under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 701, *et seq.* Plaintiff was appointed as trustee.

On January 19, 1987, the debtor made a payment of $4,023.00 to the defendant, an officer and shareholder of the debtor corporation. On September 10, 1987, it made a second payment of $4,000.00 to the defendant. The transfers were allegedly repayments of advances made to the debtor to cover impending payroll expenses. The

loans were not supported by promissory notes and were to be repaid whenever the debtor had the necessary financial ability.

On January 19, 1987, the date of the first transfer and one year prior to the petition date, the debtor had debts of $8,577.10 and assets with a fair market value of $28,-487.16. On September 10, 1987, the debtor had assets of $31,832.50 and debts of $10,-364.97. The obligation to Aero is excluded from both of these computations.

The bankruptcy estate, not taking into consideration this action, consists of $3,155.12. Only one creditor, Aero Development, Inc., has filed a proof of claim. No objection to that claim has been filed, and the claim is deemed allowed pursuant to § 502(a).

On March 21, 1988, the plaintiff initiated this adversary proceeding seeking to recover the two transfers to defendant as preferential transfers. Both parties have stipulated that the defendant is an "insider" within the meaning of § 101(30)(B)(ii) and that the one year period of § 547(b)(4)(B) applies.

## CONCLUSIONS OF LAW

■ Pursuant to § 547(b) of the Bankruptcy Code, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of of the filing of the petition, or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Both parties to this adversary proceeding have stipulated that all of the elements set forth above are satisfied, with the exception of subsection (3). Thus, the major issue to be determined is whether the debtor was insolvent when the transfers of January 19, 1987, and September 10, 1987, were made. This in turn, depends upon resolution of the question of when the debt to Aero arose.

For a transfer to be avoidable under § 547, it must be made while the debtor was insolvent. Pursuant to section 101(31)(A), "insolvent" means:

financial conditions such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title. . . .

From the clear wording of § 547, this determination is to be made at the time when the alleged preferential transfer occurred and not when the petition was filed.[1]

To determine whether a debtor was insolvent when the transfers were made, the Court must undertake a "balance sheet" analysis comparing current assets with current liabilities. An entity is insolvent if its debts are greater than its assets, at a fair valuation, exclusive of property exempted or fraudulently transferred. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5810–5811, 6269.

---

**1.** Because the Court is dealing with a transfer to an insider made between ninety days and one year prior to the petition date, the plaintiff is not entitled to rely upon the ninety-day presumption of insolvency set forth in § 547(f).

The defendant suggests that the debtor was solvent when the transfers were made and up until the entry of the Amended Final Judgment on November 30, 1987. According to the defendant, the debtor had debts of $8,577.10 and assets of $28,487.16 on January 19, 1987, and on September 10, 1987, the date of the second transfer, it had debts of only $10,364.97 and assets of $31,832.50. The plaintiff, on the other hand, suggests that the $22,441.84 debt owed by the debtor to Aero Development, Inc., is a debt which must be included in the insolvency computation on both dates.

The issue of when payment arises is crucial to this adversary proceeding. If payment arose on June 1, 1986, the date the agreement between debtor and Aero ended, then the payment to the defendant would have made the debtor insolvent. If, on the other hand, the payment arose with the entry of the Amended Final Judgment on November 30, 1987, then the payments made to the defendant would not have made the debtor insolvent. The Court must begin its resolution of this issue by examining the definitions section of the Bankruptcy Code.

"Debt" is defined in § 101(11) simply as a liability on a claim. "Claim" is defined in § 101(4) as a—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Although the Bankruptcy Code defines "claim" for purposes of bankruptcy law, it does not clearly establish when a right to payment arises. Absent overriding federal law then, the question of when payment arises is to be determined according to state law. *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 337 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985).

The answer to this question is clear. Under Florida law, damages for breach of contract are generally measured as of the date of the breach. *Grossman Holdings Ltd. v. Hourihan*, 414 So.2d 1037 (Fla. 1982); *Lake Region Paradise Island, Inc. v. Graviss*, 335 So.2d 341 (Fla. 2d DCA 1976); *Mar–Len Housing Enterprises, Inc. v. Mar–Len Gardens "I" Corp.*, 302 So.2d 469 (Fla. 3d DCA 1974). Moreover, the time of breach may be fixed by the making of a demand or the commencement of a suit. *Milton v. Blackshear*, 8 Fla. 161 (1858). Accordingly, the Court finds that the right to payment arises upon breach of contract.

Although the Florida Circuit Court did not determine the date of debtor's breach, it implicitly recognized June 1, 1987, as the date of the breach by computing pre-judgment interest from that date. The Court finds that June 1, 1987, is the date when the right to payment arose.

Having so concluded, the obligation to Aero must be included in the "balance sheet" computation of insolvency. Accordingly, on January 19, 1987, the debtor had liabilities of $29,077.58, including $21,965.79 owed to Aero plus interest, and assets of $28,487.16.[2] Similarly, the addition of the $21,965.79 obligation to Aero to the debtor's liabilities on September 10, 1987, results in total liabilities of $32,330.76 compared to total assets of $31,832.50. The Court concludes that the debtor was insolvent on the dates when the transfers were made.

Finally, the defendant contends that the payments fall within the exception of 11 U.S.C. § 547(c)(2) as a transfer in the ordinary course of business. This section

---

**2.** Pursuant to § 687.01, Florida Statutes, Aero was entitled to interest on its claim at the rate of 12% per annum.

provides that a trustee may not avoid an otherwise preferential transfer—

> (2) to the extent that such transfer was—
>> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>> (C) made according to ordinary business terms.

The Court has considered the transfers in question and concludes that the payments were not made in the ordinary course of business as contemplated by § 547(c)(2). First, the payments were made to an insider for, and on behalf of, an antecedent debt. Secondly, the loan from the defendant to the debtor was made under extraordinary circumstances (i.e. an emergency bailout to keep the business running) and was not properly evidenced by a promissory note. Third, the defendant is a college professor and is not ordinarily engaged in the business of lending money. Furthermore, there is no evidence of a prior course of dealing between the debtor and the defendant which would aid the Court in its determination of whether payment was made in the ordinary course of business. Finally, there was no structured repayment schedule detailing when the payments were to be made, and instead, the debtor was free to repay the loan at will.

For the foregoing reasons, the Court concludes that the transfers of January 19, 1987, and September 10, 1987, are avoidable by the plaintiff pursuant to 11 U.S.C. § 547. The Court will, by separate order, enter final judgment in favor of the plaintiff.