In re Gary A. DAVIS, Debtor.

Richard W. ROEDER, Trustee,
Plaintiff/Appellant,

v.

John M. ALLEMAN, Robert E. Draudt,
et al., Defendants/Appellees.

Civ. A. No. 89–227.
Bankruptcy No. 87–00576E.
Adv. No. 88–47.

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 7, 1990.

Richard W. Roeder, Titusville, Pa., pro se.

Gary V. Skiba, Erie, Pa., for Robert E. Draudt.

John F. Spataro, Meadville, Pa., for Virginia Alleman and John M. Alleman.

Louis J. Stack, Meadville, Pa., for debtor.

## MEMORANDUM OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

This matter is before us on remand from the United States District Court with instructions to issue a Memorandum Opinion providing specific findings of fact regarding the liabilities of Gary A. Davis ("Debtor") arising from the Willy's Car Wash partnership.

The issue in this preference action is whether the Debtor was insolvent on August 24, 1987, at the time the Debtor made payments of $10,611 and $16,642 to John M. Alleman ("Alleman") and Robert E. Draudt ("Draudt"), respectively.

Richard W. Roeder, Esq. ("Trustee") asserts that the payments were transfers for or on account of antecedent debts owed by the Debtor before the transfers were made and that said transfers were made while the Debtor was insolvent, within 90 days of the bankruptcy filing, and thus constitute a preference under § 547 of the Bankruptcy Code.

Alleman and Draudt assert that the Debtor was solvent at the time of the transfers and therefore the transfers are not preferences.

### Facts

The Debtor had interests in two car washes, the EZ Clean Car Wash in which he was the sole proprietor and Willy's Car Wash in which he was a partner with a 40% interest.

In 1985 the Debtor solicited investments for the EZ Clean Car Wash. Draudt and Alleman contributed $15,000 each. In return, the Debtor executed promissory notes in favor of Draudt and Alleman. The promissory notes gave Draudt and Alleman a power to confess judgment. An additional agreement provided that Draudt would receive 15% of the net profits generated from the EZ Clean Car Wash and further provided that Draudt would receive at least a $30,000 return on his investment at the end of five (5) years; and if he did not, the Debtor would convey, for $1.00, 15% of the EZ Clean Car Wash to Draudt. Alleman had only a promissory note. He did not have the additional agreement.

In 1987 the Debtor decided to sell the EZ Clean Car Wash. The purchaser required the Debtor to transfer the car wash free and clear of the Draudt and Alleman interests. By agreement dated July 8, 1987, Draudt agreed to accept $16,324 and by agreement dated July 13, 1987, Alleman agreed to accept a $10,844 in full satisfaction of all right, title and interest that they had in the EZ Clean Car Wash, along with a release of any further monies due on the promissory notes. The Debtor expected to close the sale of the EZ Clean Car Wash by August 1, 1987, however, the closing was delayed until August 24, 1987. Because of the delay, the settlement amounts with Draudt and Alleman were amended on August 21, 1987. On August 24, 1987, Alleman was paid $10,611 and Draudt was paid $16,642 at the closing from the proceeds of sale. The Debtor's bankruptcy petition was filed within 90 days thereafter, on November 10, 1987.

After payment to Draudt and Alleman, payment of all security interests others held in the car wash, payment of a divorce settlement with Debtor's wife, and an escrow for capital gains tax, the Debtor left the closing on August 24, 1987 with $52,902.

From the $52,902, the Debtor paid off his debts, leaving him with cash in the amount of $25,890 before consideration of the financial condition of Willy's Car Wash.

Subsequently, between August 25 and September 24, the Debtor transferred assets to his parents totalling $24,500. The Trustee asserts that the Debtor's transfers to his parents were fraudulent and that the amount of the transfers must be deducted from the Debtor's assets at the time of payment to Draudt and Alleman. The Trustee further asserts that the amount of the Debtor's exemptions must be deducted from the Debtor's assets at the time of the alleged preferential transfers.

■ We disagree. The determination of insolvency is to be made at the time when the alleged preferential transfer occurred and not when the petition was filed. *In re Flight Management, Inc.*, 99 B.R. 477 (Bankr.M.D.Fla.1989). Evidence of insolvency on the date of the transfer is the critical issue and proof of insolvency on any other date is insufficient to prove this element. *In re Thomas Farm Systems, Inc.*, 18 B.R. 541 (Bankr.E.D.Pa.1982). Therefore, the Debtor's subsequent use of the money is immaterial to the determination of solvency on the date of the transfers.

■ At the time of the transfers to Draudt and Alleman, the Debtor's property consisted of $25,800 in cash and his partnership interest in Willy's Car Wash.

Since a partner's assets may be used to satisfy the debts of a partnership, we must inspect the solvency of Willy's Car Wash on the date of the transfers. If we find that Willy's Car Wash was insolvent by an amount less than $25,800, then the Debtor was solvent as the Debtor would have been able to pay all the debts of Willy's Car Wash out of the $25,800 in cash and continue to have a positive worth. If, however, Willy's Car Wash was insolvent by an amount greater than $25,800, we must inspect the solvency of Willy's Car Wash in relation to the solvency of the other partners as each general partner's assets must be taken into account along with the Debtor's to the extent that the value of nonpartnership property exceeds nonpartnership debts. *See Francis v. McNeal*, 228 U.S. 695, 700, 33 S.Ct. 701, 702, 57 L.Ed. 1029 (1913) and *Kaufman–Brown Potato Com-*

*pany v. Long*, 182 F.2d 594, 601–02 (9th Cir.1950).

■ The accounting firm of Hill, Borth & King prepared a draft of a balance sheet for Willy's Car Wash as of July 31, 1987. The July 31, 1987 balance sheet indicates a net equity of $25,521.

The evidence shows that Willy's Car Wash had additional liabilities as of August 24, 1987 that are not reflected on the July 31 balance sheet as follows:

| | |
|---|---|
| Real Estate taxes | $ 6,204.00 |
| Delinquent rent | 1,100.00 |
| August rent | 2,190.00 |
| Additional taxes | 10,982.00 |
| | $20,476.00 |

After deducting these additional liabilities from the net worth of $25,521 as shown by the July 31 balance sheet, Willy's Car Wash is left with a net worth of $5,045 as of August 24, 1987.

■ The Trustee asserts that the net worth of Willy's Car Wash must be further reduced to reflect a reduction for 1) the difference between book value and the price received subsequent to bankruptcy for Willy's Car Wash equipment; 2) a reduction to show the value of Willy's Car Wash leasehold improvements at zero and 3) to show as a liability the entire amount of rent for the remainder of the lease term.

The assets must be valued at what they are reasonably worth at the time of the allegedly preferential transfers and not what they turned out to be worth at some time after the bankruptcy intervened. *Cissell v. First National Bank of Cincinnati*, 476 F.Supp. 474, 482 (S.D.Ohio 1979).

The Trustee asserts that Willy's Car Wash equipment should be valued on a liquidation or distressed value basis. Alleman and Draudt assert that Willy's Car Wash should be valued as a going concern.

As stated in *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 386–87 (Bankr.D.Minn. 1985):

One commentator has correctly observed that "there is overwhelming authority to the effect that normally (the valuation of a business enterprise) must be made

from the vantage of a going concern." 2 Collier on Bankruptcy paragraph 101.29, at 101–63 (15th ed. 1985). (Citing cases.) It has been further stated that "subsequent dismemberment or impossibility to dispose of plant, equipment, inventory, etc., as an entirety should not enter into the picture," 2 Collier on Bankruptcy paragraph 101.29, at 101–63. In contrast, one court has suggested the financial outlook of a debtor corporation, or the intention of its stockholders and directors to liquidate at an early date, might be factors in determining if a business is a going concern. [*In re Nathanson Bros.* [*Co.*], 64 F.2d [912] at 913 (6th Cir.1933)]. If the business is in fact being conducted at the relevant time, though, then its assets must be valued, not as isolated articles separated from the whole, but as parts of the whole and useful in that relationship. *Id.* Only where a business is wholly inoperative, defunct, or dead on its feet, will going concern valuation be abandoned in favor of an item by item fair market valuation. *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 386–87 (D.Minn.1985).

The Trustee asserts that Willy's Car Wash was on its deathbed and therefore "going concern" values are inappropriate. We disagree.

At the time of the alleged preferential transfers, the Debtor was under the impression that he could remain in business and operate profitably even though he was actively seeking additional cash through new investors and negotiating with the landlord to obtain concessions.

The Debtor realized problems existed. He had talked with counsel in July 1987 regarding the ramifications of bankruptcy. However, the Debtor did not lose hope and cease his intent to continue operations until mid to late September 1987 after all prospects of obtaining additional investors vanished. On September 5, 1987, the Debtor paid the landlord a month's rent and Willy's Car Wash remained open and operating until the first part of October. We will therefore look to "going concern" values in determining the worth of Willy's Car Wash assets.

The Trustee believes the value of Willy's Car Wash equipment should be reduced from $41,506 to $20,000 based on the fact that it was subsequently repossessed and that the Debtor had received an offer of $16,000–18,000 for the equipment. We believe $16,000–18,000 represents a distressed sale price. As of the date of the transfer, August 24, the business was operating as a going concern and we find that the book value of $41,506 approximates going concern value.

We likewise value the leasehold improvements at book value and find that the stated value of $66,132 approximates going concern value. We cannot agree with the Trustee that such improvements have no value because of a possibility that they might subsequently revert to the landlord if Willy's Car Wash were declared in default of its lease.

We further find that Willy's Car Wash, as a going-concern, had no obligation as of August 24 for the rents due over the remaining term of the lease and consequently do not reduce the net worth of Willy's Car Wash for rents, except for rents due as of August 24, the date of the transfers.

We agree with the Trustee that organizational costs are an intangible, not readily convertible to cash and therefore reduce the net worth of Willy's Car Wash by $1,237.

From the above, we conclude that the net worth of Willy's Car Wash, based on a going-concern value as of August 24, 1987, was as follows:

| | |
|---|---|
| Equity balance 7/31/87 | $25,521 |
| Additional liabilities | (20,476) |
| Organizational costs | (1,237) |
| Equity balance 8/24/87 | $ 3,808 |

Accordingly, we find that Willy's Car Wash was solvent as of August 24, 1987 and that neither the Debtor nor the other partners would be required to contribute assets to fund any deficit in Willy's Car Wash as of that date. In addition to any equity the Debtor had in Willy's Car Wash, he had also paid his personal liabilities and had $25,800 in cash. After deducting the

Debtor's claimed exemptions in the amount of $13,316, the Debtor remained solvent.

Both Willy's Car Wash and the Debtor were solvent as of the date Alleman and Draudt received payment. Therefore, the payments to Alleman and Draudt are not preferences.

Our order of July 12, 1989 dismissed the Trustee's preference claims. After reargument, our order of August 17, 1989 reconfirmed the order of July 12, 1989.