JAMES P. COKER, PLAINTIFF AND APPELLANT, vs. MERRITT'S EXECUTOR, DEFENDANT AND RESPONDENT.

1. It is within the discretion of the Court to rule out any improper evidence which has been admitted in the progress of a trial, before the closing arguments of the counsel.

2. Under Section 28 of "An Act relating to Jurors," approved August 1, 1868, the Court is to determine the necessity of a view by the jury of "the premises or place in question," and having exercised a sound discretion in denying a motion for such view, this Court will not interfere.

3. To authorize a Court to grant a new trial upon the ground of newly discovered evidence, the party must show that the evidence has come to his knowledge since the trial; that it is not through the want of diligence that it did not come to his knowledge sooner, and that it is not cumulative, but relates to facts upon which there was, on his part, no evidence on the trial complained of.

4. When it is alleged as error that certain undue influences were brought to bear upon some members of the jury to prejudice or mislead them, or to influence them to find for a party, the misconduct or irregularity so complained of upon the part of the party or the jurors, must be satisfactorily proven.

5. A verdict will not be set aside when the evidence is conflicting, unless it is apparent that the jury have been actuated by some improper motive.

Appeal from the Circuit Court for Jackson county.

This is an action under the Code.

The complaint of the plaintiff alleges that on the 11th of March, 1869, he was seized and possessed of certain premises in Jackson county, on the "Blue Spring creek," upon which was a grist mill, propelled by the water of said creek, and running two sets of stones or runners, and employed in grinding grain for the public for toll; that the mill and water power was susceptible of being used for operating other machinery, and that the plaintiff had long contemplated the employment of such water power to its full extent; that the defendant, on the 7th day of December, 1871, purchased of Jonathan Pelt, and some time thereafter from William Taylor, a tract of land about two miles below the plaintiff's mill, on said "Blue Spring creek," upon which there was a mill-race, and operated by the said Pelt and Taylor; that since the purchase of such mill by the defendant he has raised and flooded back the water of said "Blue Spring creek" upon the land and mill of the plaintiff twelve to twenty inches, to injury of the plaintiff two thousand dollars; that such back-flow of water upon his land and mill

has permanently injured the value of the water power and privilege to the extent of five thousand dollars.

The plaintiff further complains, that about the 1st of November, 1872, he had verbally sold to one S. M. Dunwoody the one undivided half interest in his said mill and water power for the sum of twenty-five hundred dollars; that the defendant sought an interview with the said Dunwoody, and represented to him that if he bought an interest in said mill and water power he, the defendant, would flow the water back so as to drown the said mill out and render it valueless; that from such representations Dunwoody was deterred from completing such purchase; that by reason thereof plaintiff was damaged in the sum of twenty-five hundred dollars. Plaintiff prays judgment for the injuries to the amount of nine thousand and five hundred dollars, and costs.

The defendant, in substance, denies all the allegations in the complaint, and on the contrary alleges that from the fact of the weakness of his dam he has kept the water from eight to twelve inches lower than it was kept by Pelt and Taylor, and two and a half feet lower than a water mark which the defendant alleges had been fixed upon by Danelly and Sims, previous owners of plaintiff's mill site, and through whom he claims plaintiff derived title; that his mill was built long anterior to that of plaintiff; that plaintiff bought with full knowledge of defendant's rights; that he has never raised the water of the creek an inch higher than is necessary to run his mill; that defendant believes that if the water of the creek is thrown back upon the plaintiff's mill, there are other causes than the action of defendant as to the use of the water of the creek or the effect of his dam.

The defendant further alleges, that the mill and dam of defendant were built upon the present site, and the waters of the "Blue Spring creek" were used by Pelt and defendant, claiming under him, for more than seven years before the institution of this suit, and that said waters were not

. flowed back by said Pelt to the same and greater height than now; that the dam of defendant and the water power created thereby were and have been, during all the time above mentioned, held and enjoyed by said Pelt and Taylor and this defendant, and claiming title thereto adverse to the plaintiff and all other persons, and during all that time for the propulsion of said mill without hindrance or molestation from the persons owning or occupying the mill of plaintiff and premises, as set forth in the complaint.

Subsequently, two amended answers were filed, both of which were demurred to by plaintiff's counsel. The demurrer to the first amended answer was sustained, while that to the second was overruled. No question of error being raised upon either of them, they are omitted. Before the cause came on to be tried E. J. Merritt died, and his executor, Alex. Merritt, was substituted as the defendant.

The cause was tried by a jury at the June term, 1876, who found for the defendant. A motion for new trial was made and denied by the court, whereupon judgment was entered against the plaintiff for costs. From this judgment the plaintiff brings his appeal.

*J. F. McClellan* for Appellant.

*W. H. Milton* for Respondent.

Mr. Justice Van Valkenburgh delivered the opinion of the court.

This was an action brought under the Code of Procedure, and was tried at the June term, 1876, of the Circuit Court held in Jackson county, in the First Judicial Circuit.

The first error alleged is that "the court erred in ruling out and instructing the jury to disregard the evidence of John A. Malambre." The record recites simply that "the depositions of John A. Malambre were read. He said, I

heard Erthington I. Merritt say that he would flow back the water of Blue Spring creek upon the mill of James P. Coker and drown his mill out. This was in 1873. After the deposition was read to the jury the defendant moved to rule it out on the ground that it referred to declarations of Merritt after the suit was brought, and the court, upon that ground, ruled out the whole deposition, to which ruling the plaintiff excepted by his counsel." No other portion of the deposition of Malambre appears any where in the record, and for the purpose of passing upon this alleged error, the court must take the matter so recited as the whole of the evidence of such witness, under a commission, which we must infer was issued.

The action was commenced by the filing of a complaint on the 23d day of November, 1872, and was brought to recover the damages sustained by plaintiff by reason of the alleged injuries received from the defendant previous to that time. The evidence relates to a conversation held with the defendant in year 1873, and consequently must have been long subsequent to the commencement of this action. If the court had permitted the evidence so introduced to have been considered by the jury, it could have had no weight with them in coming to a conclusion upon the facts as they existed at the commencement of the action; and those were the only facts they were sworn to pass upon. It was irrelevant to the issue, and irrelevant matter may be very properly excluded from the jury. It having been read, perhaps inadvertenly to the jury, the motion to rule out was properly granted by the court. The evidence was calculated to mislead the jury, and it would have been error in the court to have received it under an objection upon the part of the defendant. If of any value whatever, it could only be used in a separate action for damages arising subsequent to the commencement of the action then under trial. It is within the discretion of the court to rule out such evidence which

has been admitted at any time during the progress of the trial, but such ruling out should take place before the closing arguments of the counsel. Judge of Probate vs. Stone, 44 N. H., 593.

The second error now assigned is " that the court erred in not permitting the jury to go and view the premises."

Upon the close of the evidence, the plaintiff moved the court hat the jury be allowed to go and view the mills of the plaintiff and defendant, and all the localities connected with them that were involved in the issue, offering at the same time to pay the expenses of thus making such view. This motion and offer are made under Section 28 of " An act relating to jurors," approved August 1, 1868, which is in the following language : " The jury may, in any case, at the request of either party, be taken to view the premises, ro place in question, or any property, matter or thing relating to the controversy between the parties, when it shall appear to the court that such view is necessary to give a just decision, provided the party making the motion shall advance a sum sufficient to defray the expenses of the jury and the officers who attend them in taking the view," &c.

The court, in the exercise of its power, and in view of the evidence which had then been closed, and after hearing read an affidavit by the defendant from which it appeared, that since the commencement of this action he had erected a new mill upon the site of the old one, and had raised the dam to a height sufficient to hold five feet of water, and that the status of the mill and property had thus been materially changed, denied such motion.

The jury upon such view would not have found the facts existing towards which the evidence had been directed. The mill of the defendant had been rebuilt, a saw mill had been added thereto, the dam of the mill had been raised, and the entire nature of the mill property had been materially affected and changed, as appears by the affidavit which is

brought up by the record. The court below was the proper judge of the necessity of such view by the jury, and having exercised his discretion in denying the motion, this court will not reverse his judgment thereon.

The third error assigned is "in not granting a new trial, upon the ground of newly discovered evidence."

Upon the hearing of the motion on the part of the plaintiff, that the jury be permitted to view the premises, the defendant, in opposition thereto, made his affidavit—the substance of which is stated before—"that the dam of said mill has been raised to a height sufficient to hold five feet head of water, in place of the old head of water." This is claimed to be the newly discovered evidence upon which the plaintiff asked for a new trial. If the plaintiff had been aware of the fact, as stated in the affidavit, at the time of the trial, we cannot see how he could have availed himself of it. The dam was raised after the commencement of the action, and no proof of that fact could have been legally given to the jury. Had a new trial been granted, he could not have benefited himself by a knowledge of the fact that the water had been thus raised to the height of five feet. The damages sought to be recovered are alleged to have occurred anterior to the time when this new dam was erected. But supposing it was evidence which might properly be used upon a new trial, can it be said to have been newly discovered evidence? The fact existed previous to the time of the commencement of the trial of the cause, and Alexander Merritt was examined therein as as a witness. It cannot be said that the plaintiff who owns the mill near by on the stream and within three miles, and who complained of being damaged by the back flow, was not aware of this new erection of mill and dam. The court, in order to be authorized to grant a new trial upon such a ground, should be satisfied that the evidence claimed to be newly discovered could not have been obtained for use on the

prior trial by diligent inquiry. It will not answer for a party to go to trial unprepared, and if unsuccessful, rely upon getting back into court upon the ground of newly discovered evidence, when by mere observation or inquiry that evidence might have been obtained. Then, too, the evidence would only have been cumulative. There was much evidence as to the height of the water in the pond, and the effect it had on the plaintiff's mill. That was the issue. To enable a party to procure a new trial upon the ground of newly discovered evidence, such evidence must touch a fact upon which there was, on his part, no evidence on the trial complained of; not simply cumulative, sustaining the proof already introduced as to certain other facts.

In Sharp and Brown vs. Loylers, 39 Ga., 678, the court says : " To entitle a party to a new trial on the ground of newly discovered evidence he must show—first, that the evidence has come to his knowledge since the trial ; second, that it is not owing to any want of diligence on his part that it did not come to his knowledge sooner ; third, that it is so mate-rial that it would probably produce a different result if the new trial should be granted ; fourth, that it is not cumulatively only—that is, it must relate to facts of which there was no evidence on the trial complained of."

The fourth error assigned is, "that the jury were labored by the defendant."

We understand this to mean that certain influences were brought to bear upon some of the jurors to prejudice or mislead them, or to corruptly induce them to find for the defendant. To support this alleged error upon the motion for new trial, the plaintiff introduced first his own affidavit, in which he swears, " That he is informed and believes that some of the jurors in this case have been labored by the defendant and his friends ; that the defendant has, during the trial of this case, cared for the horses of the jurors, John P. May and S. R. Barnes, by putting them up in his stable

and caring for them while on the jury; and that defendant did other acts calculated to influence some of the jurors, such as inviting them to his store, extending them many and marked attentions, and the same was exhibited on the part of his friends, and he believes that these acts did influence some of the jurors as to their verdict." Also says upon this point in such affidavit: "That Emanuel White, one of the jurors, revealed the verdict of the jury before, it was announced in court, to one Norflet White; that he is informed and believes that H. B. Grace, a warm friend of the defendant, did, by association and clandestinely, influence one or more of the jurors sitting in this case; that he is informed and believes that since the rendition of this verdict the defendant has been treating the jury, if not ale, to whisky, and passing with them, he and there, a general congratulation of their safe delivery of him from this cause."

Another affidavit was read in support of this motion, upon the part of the plaintiff, made by Major J. Carraway, by which it appears that the affiant had, for several years, "known Augustus B. Connor, or O'Connor; that on or about the third day of the trial of the case of James P. Coker vs. Alexander Merritt, as the executor of Erthington I. Merritt, deceased, he asked Augustus B. Connor, who was a juror on said case at the late term of Jackson Circuit Court, how he thought the case was going? He replied that he did not know exactly, but he thought in favor of Merritt; that the affiant is 21 years old on the 14th day of August next; that he has talked with the juror, Augustus B. Connor, and that, from talking with him, he has ascertained that he is about one year older than affiant."

On the hearing of the motion on the two foregoing affidavits, the defendant introduced and read—

First. The affidavit of Augustus B. O'Conner, the juror mentioned in the last preceding recited affidavit, who swears that the language inputed to him in such affidavit

made by Major J. Carraway is entirely false; that he was twenty-two years old on the 20th day of the March then last past, and that he was registered as a citizen of the said county prior to his being summoned as a juror.

Second. The affidavit of S. R. Barnes, one of the jurors, who swears that the allegation of plaintiff in his affidavit, "in which he states the defendant cared for his horse by putting him up in his, defendant's, stable and caring for him, is not true; that he requested permission of defendant to put his horse in a vacant lot in order to feed him and not keep him tied up all day, and that he, affiant, furnished his own corn and fodder." This affiant further says, in the course of his affidavit, "that the plaintiff had his, affiant's, horse put up at the livery stable in Marianna one night during the trial."

Third. The affidavit of H. B. Grace, who swears that the allegations contained in the plaintiff's affidavit against him are untrue in every respect; that "he never attempted by word or deed to influence the jury either for the plaintiff or defendant."

Fourth. The affidavit of Emanuel White, one of the jurors in the cause, who swears that the allegations in the affidavit of the plaintiff, that this affiant "revealed the verdict of the jury before it was answered in court to one Norflet White, is untrue."

Fifth. The affidavit of John P. Mayo, one of the jurors, and named in the plaintiff's affidavit, states that the defendant "did not care for his horse by putting him up in his, defendant's stable, neither did he feed his said horse as alleged in plaintiff's affidavit; that affiant, not desiring to keep his horse tied up all the time, and not being able to put his horse at the livery stable, did put him in a vacant lot of defendant's, but he, affiant, furnished his own feed for his said horse;" that defendant neither by act nor word at-

tempted to influence his judgment in this case, pending or before trial.

Sixth. The affidavit of Alex. Merritt, the defendant, who swears " that he has not labored any of the jurors in this case, either by giving them, the jury, any personal attention, nor has he cared for any of the horses of the jury that tried the above case;" that John P. Mayo and S. R. Barnes, who were jurors, once or twice put their horses in a vacant lot of defendant's, but this defendant did not have their horses fed or have them put up in his stables, neither did defendant by any act attempt to influence them by inviting them to his store; that defendant keeps store in Marianna, and treats any one politely that enters, and is not aware of any extra attention or politeness shown any of said jurors during the trial, and that he never treated any of the jury after the trial."

Had there been no question, upon the showing of the plaintiff that improper influences had been used by and upon the part of the defendant upon the jury to control their verdict, the affidavit read upon the part of the defendant changes entirely the aspect of the case. The rule is well settled that to lay the foundation for the interposition of the court, the misconduct, or irregularity upon the part of the party, or of the jury, must be satisfactorily proved. In the case at bar we cannot say that it was so proved; each and every allegation of misconduct, either upon the part of the defendant or of the jurors so individually charged, is denied, and that too in as solemn and effective manner as it is urged. The weight of the evidence is on the side of the defendants.

The only remaining error relates to the evidence taken upon the trial of the cause: that the verdict is against the weight thereof, and that it could only have been arrived at through bias, prejudice, and mistake, and that it does not reach a substantial or just conclusion.

The issue was one of fact, whether the plaintiff had sus-

Coker v. Merritt—Opinion of Court.

tained damage by reason of the injurious and unlawful acts of the defendant; a question peculiarly within the province of the jury to determine, and with which the court had nothing to do. A large number of witnesses were examined both by plaintiff and defendant, thirty-eight in all, as appears by the record. A number of days were occupied in the trial, and the parties were severally represented by able and intelligent counsel. Both the parties to the action were examined as witnesses, and the evidence touching the issues is very conflicting. The judge who presided at the trial of the cause, who saw and heard the witnesses, has refused to grant a new trial upon the ground assigned as error. There is no evidence in the record to warrant the belief that the jury were controlled by any improper motive, or that they were either biased, prejudiced, or mistaken. The trial was fairly conducted, and the verdict was uninfluenced by passion. The evidence was conflicting, and it was for the jury to determine the facts; we will not disturb the verdict. Cameron vs. State, 16 Fla.; Clifford vs. Luhring, 69 Ill., 401; Bishop vs. Busse, ib., 403; Warren vs. Cummings, 37 Wis., 81; Berry vs. Elliott, 25 Ark., 89.

In Miller vs. Balthasser, (78 Ill., 302,) the court say: "The rule is uniform that a verdict will not be set aside when the evidence is conflicting, even though it may be against the weight of evidence, unless it is apparent the jury have been actuated by passion or prejudice."

The judgment is affirmed.