WILLIAM MITCHELL, PLAINTIFF IN ERROR, VS. THE
STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal law—Opinion evidence—Grounds of objections to evi-
dence must be stated—Argument of counsel—Harmless error
—Newly discovered evidence as ground for new trial.

1. The physical or mental condition or appearance of a person,
or his manner, habit or conduct, may be proved by the
opinion of an ordinary witness, founded on observation.

2. General objections to questions addressed to witnesses, with-
out stating the precise ground of objection, are vague and
nugatory, and are without weight before an appellate court.

3. It is not reversible error for the court to refuse to interfere
with the argument of counsel because it is illogical, or not
based on deductions reasonably inferrable from the facts.

4. If from the verdict returned it is clear that a charge given
did not influence the jury in arriving at it, and if from the
standpoint of the verdict actually found such charge was
favorble to the defendant, he cannot complain of it on writ
of error, even though it may have been erroneous.

5. Applications for new trial upon the ground of newly discov-
ered evidence are looked upon with distrust and disfavor,
and are granted only under the following restrictions: (1)
The evidence must have been discovered since the former
trial. (2) The party must have used due diligence to dis-
cover and procure it on the former trial. (3) It must be ma-
terial to the issue. (4) It must go to the merits of the cause,
and not merely to impeach the character of a witness. (5)
It must not be merely cumulative. (6) It must be such as
ought to produce on another trial an opposite result on the
merits. The party applying must make his vigilance appa-
rent, for if it is left even doubtful that he knew of the evi-
dence, or that he might, but for negligence, have known of
and produced it, he will not succeed in his application. It is
no sufficient proof of diligence in this respect merely to assert
in the affidavit that the defendants have used every endeavor
to obtain evidene bearing on the issues involved in the case.
Neither is it sufficient to show that the newly discovered evi-
dence was not known to the defendants counsel until after
the former trial.

Writ of Error to the Circut Court for Escambia
County.

The facts of the case are stated in the opinion of the Court.

*C. M. Jones* (with whom was *Mark D. Brainard* on the brief) for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

TAYLOR, C. J.

The plaintiff in error, William Mitchell, or Will Mitchell, as he is called in the indictment, was indicted and tried for, and convicted of, murder in the first degree for the homicide of one Aaron Hines, with recommendation to mercy, and sentenced to life imprisonment at the Fall term, 1900, of the Circuit Court of Escambia county, and from such sentence took writ of error here.

After two witnesses for the State had testified in substance that they were present with the deceased and the defendant at an entertainment at the house of one Gaines on the night of the homicide, and that at said entertainment, some hours prior to the homicide, they were present when the deceased, in play, fastened a spring clasp from a suspender on the ear of the defendant, the deceased calling it a "kissing bug," and that a few words were passed about it between the deceased and the defendant, the latter saying to the former that "he would get him for it," or "would see him again," the State Attorney asked of one of such witnesses the following question: "What was Mitchell's manner at that time?" and of the other witness: "What was Mitchell's manner at the time the above remarks were passed; what kind of humor did he seem to be in?" These questions

were objected to by the defendant, the objections were overruled, and the defendant excepted, and such rulings constitute the first and second assignments of error. The objection advanced at the trial to the first of the above questions was that it called for a conclusion of the witness. To the other question propounded to the second witness no specific objection was raised. Both of these rulings were proper. Both questions sought to elicit the mental condition of the defendant as exhibited by his manner on the occasion enquired about, whether he was in an angry or friendly mood, and both fall within the rule that "the physical or mental condition or appearance of a person, or his manner, habit, or conduct, may be proved by the opinion of an ordinary witness, founded on observation." Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410, and authorities there cited.

At the trial the defendant took the stand as a witness on his own behalf and testified in substance: That while he was sitting down at the entertainment, called a mite meeting, with one girl by his side and another in front of him, the deceased put a kissing bug on his ear; that it hurt so bad he jumped up, took it off and threw it down and asked deceased what he did it for, and that deceased then asked him if he didn't like it, and on his saying "no," the deceased struck him in the face and said "find it then," and said I had to find it, and struck him in the face two or three times; that the whole crowd of boys were there, and they said "make him find it;" that he broke out of the crowd and remained aloof from them the rest of the evening; that one of the girls with him was named "Bama," and was near enough if noticing, to have seen deceased strike him in the face; that the homicide took place on the street after the entertainment had

broken up; that he purposely remained behind to let the deceased and other boys get out of the way before he left the house of the entertainment, and that while he was on his way home in the company of two girls, one of whom was "Bama," he noticed a crowd of the same boys standing at a corner, and on his coming up one of them remarked "we will get him, here he comes," upon which he handed a waiter he was carrying to one of the girls and crawled through a crack in a fence near by, when the whole crowd began throwing brickbats at him, knocking him down, and after they had thus knocked him down two or three times he drew his pistol and fired into the crowd, as all of them were throwing bricks at him, and that he could not tell the deceased from any one else in the crowd; that he shot at the crowd and specially at no one; that the girl Bama was with him and had the same opportunity of seeing and hearing what then happened as he had. At this juncture the State Attorney, on cross-examination, asked him the following question: "Where is Bama now?" to which question the defendant objected generally without assigning any ground of objection, which was overruled and exception noted. This ruling is assigned as the fourth error. The State Attorney afterwards, without objection, drew from the defendant on cross-examination the fact that he did not know where the girl Bama was, and that he had not tried to find her, and had not had a subjoena issued for her. She was not offered as a witness. In his argument to the jury the State Attorney said that "Bama and the other woman had the same opportunity of seeing and hearing what happened at the time Aaaron Hines put the pinching bug or suspender clasp on Will Mitchell's ear, because they were sitting with him at the time of the difficulty at

the mite meeting testified about, and that they were not present to testify, and that from this fact the jury could conclude or presume that if present her tesimony would not coincide with and corroborate that of the defendant; but on the contrary, would contradict it." The defendant moved to exclude this argument from the jury upon the ground that the law implied under the circumstances no such presumption, but the court denied the motion, to which exception was taken, and this ruling is assigned as the third error.

No ground of objection being suggested or made at the trial to the question: "Where is Bama now?" no question is presented that an appellate court can review. Ever since the case of Gladden v. State, 12 Fla. 562, it has been the settled rule of this court that general objections to questions addressed to witnesses, without stating the precise ground of objection, are vague and nugatory and are without weight before an appellate court. While it might have been improper and erroneous had the court embodied the argument of the State's counsel in the form of a charge, as being a rule of law, yet because the State Attorney reasoned fallaciously or illogically from the facts furnishes no ground for reversal of the trial court for refusing to stop such argument. Juries are not bound by, and do not usually adopt or act upon illogical deductions from the evidence presented to them in argument by counsel, and it is not reversible error for the court to refuse to interfere with the argument of counsel because it is illogical or not reasonably inferrable from the facts. Missouri Pac. Ry Co. v. White, 80 Texas 202, 15 S. W. Rep. 808; State v. Toombs, 79 Iowa, 741, 45 N. W. Rep. 300.

The Circuit Judge gave the following charge: "The defendant is presumed to be innocent until his guilt is proven, and in order that he be convicted, it devolves upon the State to establish his guilt by the evidence beyond a reasonable doubt, and if you have a reasonable doubt of his guilt or innocence he should be acquitted; and if you are convinced beyond a reasonable doubt of his guilt, but have a reasonable doubt as to whether it is of a higher or lower offence, he should be convicted of the less offence." The latter part of this charge was excepted to and is assigned as error. Even if this feature of the charge can be held to be erroneous, which we do not now decide, yet under the circumstances of this case, it is patent that the defendant was not injured thereby, and that therefore it is not reversible error. The jury returned a verdict of murder in the first degree, thereby showing that they entertained no doubt as to whether the defendant was guilty of a higher or lower degree of the crime, and therefore that they could not have been influenced by such charge in arriving at their verdict. From the standpoint of the verdict actually found, the charge was decidedly favorable to the defendant and he can not complain of it. Smith v. State, 25 Fla. 517, 6 South. Rep. 482; Marshall v. State, 32 Fla. 462, 14 South. Rep. 92.

The sixth and last assignment of error is the order of the court overruling the defendant's motion for new trial. The grounds of this motion were: 1st. That the verdict was contrary to the law as given by the court. 2nd. The verdict was contrary to the evidence. 3rd. Upon the ground of newly-discovered evidence. In support of the claim of newly-discovered evidence there were filed two affidavits the first by one of the counsel for the defendant, Mr. Brainard, in which he swears that he is one of the

defendant's counsel; that since said trial he (the affiant) has discovered new testimony which, if it had been known by defendant's counsel, they could have had and introduced to the jury. Then the affidavit details as the newly-discovered evidence what purports to have been the evidence of one of the State's witnesses at the preliminary trial of the defendant before a justice of the peace, which conflicted with the evidence of such witness at the trial. The affidavit then states that affiant has used every endeavor to find evidence bearing on the case, and learned the above after said trial in a conversation with one C. M. Jones. Second, a affidavit by C. M. Jones stating that he was present at the preliminary trial of the defendant, and detailing what the State's witness' testimony was on such preliminary trial. In the case of Howard v. State, 36 Fla. 21, 17 South. Rep. 84, the following rule has been announced with reference to the granting of new trials on the ground of newly-discovered evidence: "Applications for new trial upon the ground of newly-discovered evidence are looked upon with distrust and disfavor, and are granted only under the following restrictions: (1) The evidence must have been discovered since the former trial; (2) the party must have used due diligence to procure it on the former trial; (3) it must be material to the issue; (4) it must go to the merits of the cause, and not merely to impeach the character of a witness; (5) it must not be merely cumulative; (6) it must be such as ought to produce on another trial an opposite result on the merits. The party applying must make his vigilance apparent, for if it is left even doubtful that he knew of the evidence, or that he might, but for the negligence, have known of and produced it, he will not succeed in his application." Milton v. Blackshear, 8 Fla. 161; Coker v. Mer-

Mitchell v. State.—Opinion of Court.

ritt's Executor, 16 Fla. 416. In the case of Simpson v. Daniels, 16 Fla. 677, the court says: "It is no sufficient proof of diligence in this respect to assert in the affidavit that the defendants have used every endeavor to obtain evidence bearing on the issues involved in the case." Such is the language of the affidavit in this case on the point of diligence used. But besides this, the affidavit in this case is made by one of the counsel in the case, and though it shows that the evidence was newly-discovered so far as he, the affiant counsel, was concerned, yet it does not show that it was new to the defendant himself; but, on the contrary, from the fact that the substance of it was claimed to have been deposed by the State's witness at the defendant's preliminary examination, it showed on its face that it was known to the defendant himself, since he was personally present at such preliminary hearing and heard and saw everything that there transpired. Testimony newly discovered by counsel, but all along known to exist by defendant himself, is not such newly-discovered evidence as will warrant the granting of a new trial. We think the evidence fully sustains the verdict found, and and that it is in full consonance with the law of the cause as given in charge by the court.

Finding no errors the judgment of the court below is hereby affirmed.

We feel it our duty to mention the fact that out of the one hundred and fifteen pages of typewriten matter comprising the transcript of the record sent here in this case, seventy-four pages of it consists of the stenographer's notes of the questions and anwers of the witnesses at the trial, certified by such stenographer, that have been improperly copied into the record proper, in addition to the evidence in the case in narrative form duly and prop-

erly set forth in the bill of exceptions. Such stenographer's notes, unless evidenced to an appellate court in a bill of exceptions duly certified by the trial judge, can not be considered by such court, and have no place in the record proper of a cause, and in the form presented by this record is a wholly useless waste of time and work, and can subserve no other purpose than that of uselessly increasing the cost to the county, in a case like the present where the plaintiff in error is insolvent, of the making up of the transcript of record. The clerk of this court is hereby instructed, in taxing the costs of this writ of error, to omit such superfluous matter in estimating the cost of making up the transcript of record.