C. C. Hicks, *Plaintiff in Error*, v. The State of Florida, *Defendant in Error*.

## Opinion filed February 26, 1918.

1. A judgment will not be reversed for harmless errors in rulings on the admissibility of testimony.

2. That a person who is wounded by a ball discharged from a pistol makes an outcry at the time such wound is inflicted indicating pain may be testified to by one who was present and heard the outcry. Such testimony falls under a well recognized exception to the rule excluding the mere opinion of a non-expert witness.

3. Testimony of one who was present at the scene of a shooting at night, that he was looking out through the window of a train on which he was riding the next morning, in passing the place where the shooting occurred, because "he half way expected to see somebody there" is not objectionable and inadmissible on the ground that it states a conclusion of the witness.

4. For the purpose of establishing the identity of a deceased person, alleged to have been murdered, it is competent for a witness to testify that the deceased was known by or reputed to be of a certain name.

5. It is well settled that if the defendant wishes to avail himself of the omission of the trial court to more fully charge the jury upon any point in the case he should prepare the required instruction and request that it be given.

6. It is not error to refuse requested instructions upon a point covered by instructions already given.

7. In a prosecution for murder instructions that have no basis in the transcript of the record will be held by the appellate court to have been properly refused, and especially so when

the trial judge has fully instructed the jury in his general charge upon the law of homicide in the different grades and as to the burden of proof which rested upon the State.

Writ of Error to Circuit Court for Duval County, Daniel A. Simmons, Judge.

Judgment affirmed.

*W. A. Hallowes, Jr.,* and *Miles W. Lewis,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *W. W. Trammell,* Assistant, for the State.

WEST, J.—The plaintiff in error, who will hereafter be referred to herein, as the defendant, was indicted in the Circuit Court of Duval County on a charge of murder in the first degree. He was tried and convicted of murder in the second degree and sentenced to confinement at hard labor in the State penitentiary for the term of his natural life.

To review this sentence writ of error was taken from this court.

The State's theory of the case was that the defendant, who was in the employ of the Seaboard Air Line Railway Company, shot from the top of a freight car, which was in a moving train, and killed the deceased who was found clinging on to a ladder attached to another car in the train of cars and thus riding upon the train.

The shooting occurred in the night time near Baldwin in Duval County and the body of the deceased was found early the next morning alongside the railroad track|
.... The defendant admitted shooting at some one whom

he saw holding on to the side of the car by means of the ladder, but says that he had been called upon by P. N. Strickland, a special agent of said Railway Company and a deputy sheriff of Duval County, to go with him upon the train as it was leaving Jacksonville, for the purpose of arresting three unknown men who were seen to get on the train without permission and with the intention of being transported free. That in obedience to this request he went with the said special agent and deputy sheriff upon the train. That one of the men whose name is L. O. Jones, was found and taken into custody, and that as the prisoner the special agent and deputy sheriff and the defendant proceeded walking along upon the top of the train from the direction of the engine towards the caboose, the prisoner being some twenty feet ahead of the other two, the defendant saw a man holding on to the ladder upon a car which he was approaching, threw his search light upon him and fired at him with a pistol; that at the time he fired his pistol the man at whom he fired was attempting to shoot him and that he, the defendant, fired in defense of his own life.

The deceased was not known to the defendant nor to the special agent and deputy sheriff.

The first asignment of error is predicated upon a question propounded by the State Attorney to the physician who performed an autopsy upon the body of the deceased. It related to the question of the identity of deceased and was asked him after he had testified that the body had been identified by the witness L. O. Jones: The question is as follows: "Who did he identify the body, what name did he give?" The question was excepted to by counsel for defendant upon the ground that it called for hearsay testimony. The objection was overruled and the

witness replied "He didn't know his name." In view of this negative answer, even if the court was in error in overruling the objection, which we do not decide, no injury resulted to the defendant.

It is next contended that there was error in overruling an objection of defendant's counsel to the following question propounded to the State's witness L. O. Jones: "Just describe to the jury as well as you can the sound that you heard." The question was objected to upon the ground that it called for the opinion of the witness. This witness was on the train, having been taken into custody by the special agent and deputy sheriff, at the time the shot which was alleged to have produced the death of the deceased was fired. He had testified that immediately after the shot was fired he heard a noise and was then asked the question objected to. The answer was: "Well the best description I can give of it is just kind of an animal howl, like somebody was in some" (here the objection was interposed and overruled) "a sound like a man was in some kind of agony."

That one who is wounded by a ball discharged from a pistol makes an outcry at the time such wound is inflicted indicating pain or agony may be testified to by a witness who was present and heard the outcry, and such testimony is not objectionable on the theory that the witness should be required to reproduce the outcry itself which he heard as the best evidence. The witness had stated the facts as he observed them, and testimony such as this, when given in connection with a detailed statement of the facts falls under a well recognized excepiton to the rule excluding the mere opinion of a non-expert witness. State v. Taylor, 57 S. C. 483, 35 S. E. Rep. 729, 76 Am. St. Rep. 575; Logan v. State, (Tex. Cr.

App.) 53 S. W. Rep. 694; Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410; Mitchell v. State, 43 Fla. 584, 31 South. Rep. 242; Fields v. State, 46 Fla. 84, 35 South. Rep. 185; Alford v. State, 47 Fla. 1, 36 South. Rep. 436; Kersey v. State, 73 Fla. 832, 74 South. Rep. 983.

On the morning after the shooting at night the witness L. O. Jones who was still in the custody of the special agent and deputy sheriff was returning with him on the train from Baldwin to Jacksonville. He testified that on this trip the train began to slow down and that he looked out through a window of the car in which they were riding and saw the body of the deceased lying in a ditch near the railroad track. Being asked by counsel for the State why he was looking out the window he replied "Well I hardly know why I was looking out there. I was—I half way expected to see somebody there." Counsel for the defendant moved to strike this answer on the ground that it is a conclusion of the witness, and the order denying the motion is made the basis of the third assignment of error. The witness was present when the shooting occurred. His testimony to the effect that he looked out of the car window next morning in passing the place where it occurred because he expected to see some one there is not objectionable on the ground that it is a conclusion.

There is no merit in this assignment.

The witness Strickland was testifying relative to the persons who were found riding on the train on the night the shooting occurred, one of whom was found to be the witness L. O. Jones and another the deceased. He was asked by the State Attorney if he knew who they were, the apparent purpose being to identify the deceased.

Upon replying that he did not know he was asked "who do they say they are?" He replied "L. O: Jones and Fox." Counsel for the defendant moved to strike this answer upon the ground that it is hearsay. The court ruled, and we think correctly, that it was competent for a witness to testify that the deceased was known by or reputed to be of a certain name. 16 Cyc. 1126; Reddick v. State, 25 Fla. 112, 5 South. Rep. 704.

Assignments of error are also predicated upon rulings of the trial court sustaining an objection to a motion to strike certain testimony made by the State Attorney to questions asked the witness Strickland and the defendant who was also a witness, by counsel for the defendant. The first inquired of the witness Strickland if he had had any trouble from persons breaking into cars prior to the time of this homicide, near the place where he and the defendant went upon the train on the night that this homicide occurred, and was clearly improper because the subject of the inquiry was not related to the issue involved in this case. The latter inquired of the defendant, who was testifying in his own behalf, what Strickland the special agent and deputy sheriff, said to him when he went upon the top of the train on the night of the homicide, and was clearly improper because it called for an answer which would have been purely hearsay testimony.

It is also urged that the trial court erred in the general charge which was given on the subject of self-defense. No useful purpose would be accomplished by setting this charge out here. It covers the subject and is liberal to the defendant. No other instruction on this subject was prepared and requested by him. This court has repeatedly held that if the defendant wishes to avail himself of the omission of the trial court to more fully

charge the jury upon any point in the case he should request the desired instruction to be given. Herndon v. State, 73 Fla. 451, 74 South. Rep. 511; Sykes v. State, 68 Fla. 348, 67 South. Rep. 121; Gillyard v. State, 65 Fla. 322, 61 South. Rep. 641; Padgett v. State, 64 Fla. 389, 59 South. Rep. 946; McDonald v. State, 55 Fla. 134, 46 South. Rep. 176; Lindsey v. State, 53 Fla. 56, 43 South. Rep. 87.

Errors are also assigned upon the refusal of the trial court to give several requested instructions upon the question of circumstantial evidence. If this is a case in which the evidence warrants a charge on this subject, we think it is sufficiently covered by the general charge, and there is no error in refusing requested instructions where the point is covered by instructions already given. Peeler v. State, 64 Fla. 385, 59 South. Rep. 899; Robertson v. State, 64 Fla. 437, 60 South. Rep. 118; Bennett v. State, 65 Fla. 84, 61 South. Rep. 127; Owens v. State, 65 Fla. 483, 62 South. Rep. 651.

The contention is also made that the court erred in refusing to give certain special charges requested in behalf of the defendant which were predicted upon the theory that the defendant was called upon by Strickland in his capacity as a deputy sheriff to aid him in making an arrest. The answer to this contention is that it does not appear from the evidence that the defendant was called upon by Strickland in the exercise of any such supposed authority for any such purpose. It does appear that the defendant was a night watchman and special agent of the railway company, and that Strickland was a special agent of the railway company and a deputy sheriff of Duval County. The defendant was not a deputy sheriff. In their capacity of employees and representatives of such company they were charged

with the duty of looking after and protecting from injury or damage certain of its property. On the night of this alleged homicide Strickland requested the defendant to accompany him on the train from Jacksonville to Baldwin, which he did, and on the trip this homicide occurred.

On this point the trial judge gave the following charge:

"Under the law of this State, a man who steals a ride or beats his way on a railroad is a trespasser on such train; and the agents and employes of the railroad company who are charged with the care and protection of the train are authorized to use such force as may be necessary to evict or expel the trespasser; but they are not authorized to assault such trespasser with a deadly weapon, nor to kill him unless such assault or killing became necessary under the law of self defense as already charged you."

This charge we think sufficiently covered this branch of the case and there was therefore no reversible error in the refusal of the trial judge to give the charge referred to.

The rule is that in a prosecution for murder, instructions that have no basis in the transcript of the record will be held by the appellate court to have been properly refused, especially when the trial judge has fully instructed the jury in his general charge upon the law of homicide in the different grades and as to the burden of proof which rested upon the State.

The only assignment not considered is the one based upon the denial of defendant's motion to set aside the verdict rendered and grant him a new trial. The grounds of this motion not embraced in assignments already discussed are that the verdict is contrary to the law and unsupported by the evidence.

We have examined the evidence and in our opinion it fully sustains the verdict.

No reversible error having been made to appear the judgment is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.