411 So.2d 912 (1982)
Robert E. KING, M.D., Appellant,
v.
Roland S. HARRINGTON and Jane Harrington, Husband and Wife, Appellees.
No. 81-956.
District Court of Appeal of Florida, Second District.
March 5, 1982.
Rehearing Denied March 19, 1982.
*913 Andrew D. Owens, Jr. of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, Sarasota, for appellant.
Richard A. Bokor, Tampa, for appellees.
BOARDMAN, Acting Chief Judge.
Defendant Robert E. King, M.D., appeals the trial court's order granting plaintiffs/appellees Roland and Jane Harrington's motion for relief from an original judgment in appellant's favor. We reverse.
On June 24, 1975, appellees filed a complaint against appellant for medical malpractice, alleging failure to timely diagnose Mr. Harrington's retinal detachment in 1974. A jury trial in December 1979 resulted in a verdict in favor of appellant, and final judgment was entered on December 18, 1979, in accordance therewith. Appellees took an appeal to this court which was subsequently stayed pending the outcome of this appeal.
On April 22, 1980, appellees filed a motion for relief from the judgment on the basis of newly discovered evidence. The trial court granted this motion, and this appeal followed timely.
Appellant, a Board-certified ophthalmologist, testified at trial that he had treated Harrington for various eye problems beginning in 1972. In January, 1974, appellant operated on Harrington's left eye. As part of his follow-up care, appellant saw Harrington on January 31, 1974, February 8, 1974, and February 13, 1975. On February 20, 1974, appellant refracted both of Harrington's eyes. Harrington did not have a detached retina in his right eye at this time. Appellant next saw Harrington on March 4, 1974, and both eyes were very good. Appellant next saw Harrington on April 1, 1974, when Harrington complained of a black spot in the vision in his right eye. Appellant dilated Harrington's eyes and examined his retinas. Appellant found vitreous *914 floaters, but no retinal holes or detachment.
Dr. Frederick K. Allen, Harrington's general practitioner, testified that he saw Harrington on April 25, 1974, at which time Harrington complained that he had no vision in his right eye.
Appellant testified that Harrington had an appointment with him on April 29, 1974, but did not show. Appellant next saw Harrington on June 7, 1974, a Friday, when he complained of lost vision in his right eye, and appellant found a retinal detachment. Appellant referred him to Dr. Sever, and an operation was performed the following Monday.
Harrington testified that he made and presented drawings of his visual field to appellant on four occasions, twice in February, 1974, and on April 1, 1974, and June 7, 1974. Mrs. Harrington testified that she was present on two occasions when her husband made drawings for appellant.
Appellant testified that neither appellee ever gave him any drawings such as those shown to him at trial. He agreed, however, that such drawings would have represented a retinal detachment until proven otherwise, and that if an ophthalmologist ignored such drawings, he would be negligent.
Appellee's motion for relief from judgment alleged in pertinent part:
1. That the critical issue presented herein revolved around whether or not Mr. Harrington was true and correct in his remembering that drawings were presented to the Defendant, ROBERT E. KING, M.D., showing that he had dark spots and/or curtains going over his right eye and Dr. King's position was that no such drawings were ever presented.
2. That approximately [sic] the last week in March, 1980, the undersigned counsel discovered Mary L. Cruse [sic], who was an opthalmic [sic] assistant in Dr. King's office and knew certain factors regarding the existence of the drawings critical to this cause.
3. That on April 1, 1980, the undersigned took a sworn statement from Mary L. Cruse [sic].
4. That said Mary L. Cruse [sic] remembers seeing drawings on more than one occasion describing those factors which were described by Mr. Harrington in his lawsuit and facts which were denied by Dr. King.
Kruse's sworn statement was appended thereto.
In that statement, Kruse said she had contacted appellees' counsel a week earlier as a result of having recently seen Dr. Holley, the expert called by the Harringtons at the trial in this case. Holley mentioned the case, which Kruse had heard of, and Kruse told Holley appellant had lied about the drawings. Kruse had worked for appellant from April 1973 to May 1976 and specifically recalled Harrington by name and symptoms; "I remember him so distinctly, because of the way he was and the different things that I had done for him while I worked with him." Harrington had showed her two to four drawings, and she had indicated the information he gave her verbally and in the April 1, 1974, drawing in the notes she made and gave appellant that day. Kruse had left appellant's employ because her position was unavailable at the end of a six-month medical leave of absence; she had not been fired, and there was no personal animosity between her and appellant.
The trial court found as follows:
1. That the critical issues presented at the trial concerned themselves with whether or not the Plaintiff Roland Harrington's memory was accurate when he stated that he presented drawings to the Defendant, ROBERT E. KING, M.D., showing certain dark spots and/or curtains going over his right eye.
2. That the position of the Defendant, ROBERT E. KING, M.D., was that no such drawings were ever presented.
3. That MARY (sic) L. KRUSE, who worked for Dr. King in 1974, and on pages 4 and 5 of her 16 page Sworn Statement, remembered the pictures that Mr. Harrington did present.

*915 4. That evidence of these pictures through Merry [sic] Kruse was not readily available to the Plaintiffs at trial since Merry [sic] Kruse was not working for Dr. King at the time of the trial as she left the employment of Dr. King in May of 1976.
5. That had Merry [sic] Kruse been present at the trial of this cause and had presented her testimony in accordance with her Statement taken the results of the trial probably would have been different.
Appellees sought a new trial pursuant to Florida Rule of Civil Procedure 1.540(b)(2) and (3). There is no evidence of fraud or any finding of fraud by the trial court. Appellees have made no showing that appellant knowingly testified falsely. The order granting a new trial was based solely on newly discovered evidence.
A new trial based on newly discovered evidence must be cautiously granted and is looked upon with disfavor. Vining v. American Bakeries Co., 121 Fla. 116, 163 So. 396 (1935); Dade National Bank of Miami v. Kay, 131 So.2d 24 (Fla. 3d DCA), cert. denied, 135 So.2d 746 (Fla. 1961).
Under Florida law, a motion for new trial based on newly discovered evidence will not be granted unless the evidence will probably change the result if a new trial is granted, has been discovered since the trial, could not have been discovered before trial by the exercise of due diligence, is material, and is not merely cumulative or impeaching. Mitchell v. State, 43 Fla. 584, 31 So. 242 (1901); Dade National Bank of Miami v. Kay, supra.
It is the movant's burden to establish the exercise of due diligence. It is not sufficient to merely show that the evidence was not discovered or known to counsel until after trial.
"... The party applying must make his vigilance apparent; for if it is left even doubtful that he knew of the evidence, or that he might, but for the negligence, have known of and produced it, he will not succeed in his application." Milton v. Blackshear, 8 Fla. 161; Coker v. Merritt's Ex'r, 16 Fla. 416.
Mitchell v. State, 43 Fla. at 590-591, 31 So. at 244.
Appellees were aware well in advance of trial of appellant's position that drawings were not presented to him. Kruse was an employee of appellant's for approximately two years after the alleged malpractice occurred and for approximately one year after this litigation was commenced. Her testimony could presumably have been easily discovered during this period, since there is neither an allegation for any indication that appellees sought and were unable to locate Kruse. The trial court's finding to the contrary is not supported by the evidence. Assuming her sworn statement is true, Harrington had to have been aware that someone in appellant's office in addition to appellant had seen his drawings and could corroborate his testimony. Due diligence on Harrington's part would dictate that he so advise his attorney. By the same token, due diligence on trial counsel's part would require that he inquire as to the existence of any employee of appellant who may have seen Harrington's drawings. We can only speculate that this somehow never occurred to Harrington or his attorney. The cases appellees rely on are factually distinguishable.
Accordingly, the trial court's order granting appellees' motion for relief from judgment is REVERSED and the cause REMANDED with directions to reinstate the original judgment.
DANAHY and SCHOONOVER, JJ., concur.